Duvall, J.
 

 The material facts upon the record are these : On the 4th of June 1810, sundry goods, wares and merchandise, the property of Well-man
 
 &
 
 Ropes, were attached by the deputy of Bailey Bartlett, sheriff of the county of Essex, state of Massachusetts, by virtue of certain writs of attachment sued out by several creditors of Wellman
 
 &
 
 Ropes. On the 18th day of September 1810, two several executions, issued on judgments recovered by the United States against Wellman & Ropes, at the September term 1810, of the district court, held at Salem, on their joint and several bond for duties at the custom-house. The actions in which these judgments in *4321 favor United States were rendered, were first commenced on J *the — day of August 1810 ; but no attachment of property was made thereon : on the 19th day of September following, two suits of attachment, in favor of the United States, one against Wellman, and one against. Ropes, issued in due form of law, directed to the marshal of the district, or his deputy, returnable to the district court to be held in December then next enstiing.
 

 On the 11th of October, in the same year, the goods, wares and merchandise before mentioned, being in custody of Bartlett, a sheriff of the county, and in a store hired by him for the purpose, Sprague, one of the appellants, and deputy of Prince, the marshal, after the refusal of the sheriff to open the store, forcibly broke into it and seized, attached and conveyed away the property which had been attached by the sheriff in the manner before stated, by virtue of the executions and writs of attachment in behalf of the United States, and disposed of it in satisfaction of the judgments.
 

 Wellman & Ropes continued in business until the aforesaid 4th day of J une, and then failed ; and then were, and ever since have continued to be, debtors unable to pay their debts. Wellman has continued at his usual place of abode in Salem, ever since his failure, and has not for any whole day confined himself within his house, but has sometimes kept his person within doors, and had his doors fastened, and occasionally used other vigilance and caution to avoid any arrest of his person, for two or three weeks next following the said 4th day of J une, but has never been arrested by any officer, or pursued for that purpose : Ropes has always continued at large in Salem, and has never confined or concealed himself from his creditors at any time.
 

 
 *274
 
 ■ An action of trover was commenced by Bartlett, the sheriff, for the property by him attached as aforesaid, against Prince and Sprague, who had thus forcibly dispossessed him of it, in the court of common pleas in Essex county, where,.upon trial, judgment was rendered in favor of the defendants. An appeal was prayed and granted to the supreme judicial court of the commonwealth of Massachusetts, and at November term 1811, the cause came on to be tried upon the facts before stated. Upon the plea of not guilty and issue, *the counsel for Prince and Sprague insisted, that the several matters so alleged and proved in evidence on their part, L was sufficient to maintain the issue on their part, and to bar the plaintiff of his action. This was denied by the counsel for the plaintiff, and the judge who sat on the trial delivered his opinion to the jury, that the several matters produced and proved on the part of the defendants, were not, upon the whole case, sufficient to maintain the issue on the part of the defendants, and to bar the plaintiff of his action. With this direction, the jury found a verdict for the plaintiff, and $10,240.69 damag-es. To this opinion of the court; an exception was taken, and the proceedings removed by writ of error to this court.
 

 The sole question for the consideration of this court is, whether the priority to which the United States are entitled by law, attaches in this case ? This priority is given by the 5th section of the act of the 3d of March 1797, ch. 74. It is also given by the 65th section of the collection .law, in the words following : “ And in all cases óf insolvency, or where any estate in the hands of the executors, administrators or assigns shall be insufficient to pay all the debts due from the deceased, the debt or debts due to the United States on any such bond or bonds shall be first satisfied.” In the same section, the legislature explain their meaning of insolvency, by declaring that it shall be deemed to extend as weli to cases in which a debtor, not having sufficient property to pay all his debts, shall have made a voluntary asssignment thereof, for the benefit of his creditors, or in which the estate and effects of an absconding, concealed or absent' debtor, shall have been attached by process of law, as to cases in which an act of legal bankruptcy shall have been committed. .
 

 At present there is no existing bankrupt law in the United States ; but in many of the states, provision is made
 
 by
 
 law for the relief of insolvent debtors. In the act of congress of the 4th of August 1790, the woi’d insolvency only is used. In the acts lately passed on the same subject, the words insolvency and bankruptcy *are both adopted and appear to r¡j! be used as synonymous terms. L
 

 It is admitted, that the property seized bj? the attachments and executions before stated, was insufficient to satisfy the several claims exhibited, and that Wellman
 
 &
 
 Ropes were unable to pay their debts, but it does not appear, that their property was attached, as the effects of absconding, concealed or absent debtors ; nor does it appear, or is it even alleged, that they or either of them have made a voluntary assignment of their property for the benefit of their creditors ; nor is it alleged, that either of them has committed an act of legal bankruptcy. It appears to be the true construction of the act, to confine it to the cases of insolvency specified by the legislature.' Insolvency must be understood to mean a legal and known insolvency, manifested by some notorious act of the debtor, pursuant to law : not a
 
 *275
 
 vague allegation, which, in adjusting conflicting claims of the United States and individuals, against debtors, it would be difficult to ascertain.
 

 The property in question being in the possession of the sheriff, by virtue of legal process, before the issuing the writ on behalf of the United States, was bound to satisfy the debts for which it was taken ; and the rights of the individual creditors, thus acquired, could not be defeated by the process on the part of the United States, subsequently issued. The court is of opinion, that priority does not attach in this case, and that there is no error in the judgment of the supreme judicial court of the commonwealth of Massachusetts.
 

 Judgment aflirmed.