(CHANCERY.)

## The UNITED STATES *v.* HOWLAND and ALLEN.

The Circuit Court has jurisdiction, on a bill in equity filed by the United States against the debtor of their debtor, they claiming a priority under the act of 1799, c. 128. s. 65. notwithstanding the local law of the State where the suit is brought allows a creditor to proceed against the debtor of his debtor, by a peculiar process at law.

The Circuit Courts of the Union have Chancery jurisdiction in every State; they have the same Chancery powers, and the same rules of decision in all the States.

The United States are not entitled to priority over other creditors, under the act of 1799, c. 128. s. 65. upon the ground of the debtor having made an assignment for the benefit of creditors, unless it is proved, that the debtor has made an assignment of ALL his property.

Where the deed of assignment conveys only the property mentioned in the schedule annexed, and the schedule does not purport to contain *all* the property of the party who made it, the *onus probandi* is thrown on the United States to show that the assignment embraced all the property of the debtor.

Upon a bill filed by the United States, proceeding as ordinary creditors against the debtor of their debtor for an account, &c. the original debtor to the United States ought to be made a party, and the account taken between him and his debtor.

APPEAL from the Circuit Court of Massachusetts.

This was a bill in equity filed in the name of the United States, in the Court below, stating, that several judgments had been obtained by the United States on duty bonds, against Shoemaker & Travers, and Jacob Shoemaker and their sureties, amounting to the sum of 5,292 dollars; which judgments were obtained in the District Court of Pennsylvania, at the February term of 1808, and upon which execu-

tions had issued, which remained in the marshal's hands unsatisfied; that after the execution of the duty bonds, but before they were payable, to wit, on the 6th of December, 1806, Shoemaker and Travers became insolvent within the true intent and meaning of the act " to regulate the collection of duties on imports and tonnage :" that on the first of February, 1808, goods, effects, money and credit of Shoemaker & Travers, to the amount of 6,000 dollars, had come to the hands of Howland & Allen, which, the bill alleged, they refused to subject to the executions of the United States; it prayed, that they might be compelled to account for, and deliver up, these goods, &c. in satisfaction of the claim of the United States, and for an injunction in the mean time to restrain them from disposing of, paying away, or in any manner applying the goods, &c. aforesaid, to any other object. The injunction was, accordingly, awarded. An amendment to the bill stated, that after the debts to the United States accrued by bond as aforesaid, and after Shoemaker & Travers had become-insolvent, to wit, on the 6th day of December, 1806, they made a voluntary assignment by deed, of all their property, for the benefit of their creditors, within the true intent and meaning of the act of Congress aforesaid, and an exemplified copy of the deed of assignment was annexed to the amended bill. The deed recited, that the parties being justly indebted to divers persons, whose names are mentioned in a list thereto annexed, and unable at present to pay the said debts, they assign to trustees therein mentioned,

all and singular, the estate and effects contained in a schedule annexed, in trust, to pay the debts due the enumerated creditors, and first, that due to the United States. The schedule was entitled "Schedule of property assigned by Shoemaker & Travers, and Jacob Shoemaker, to the creditors of Shoemaker and Travers," and contained many items of property, and among others, the proceeds of the cargo of the brig Deborah, which vessel was then at sea, and belonging to Howland & Allen, but had been chartered by Shoemaker & Travers. Howland & Allen, by their answer, admitted the receipt, on the 1st of January, 1807, of 4,000 Spanish dollars, the property of Shoemaker & Travers, and which the master of the Deborah had received in Guadulope for Shoemaker & Travers; but insisted on their right to apply it to an unliquidated debt of greater amount (composed of freight, demurrage, damages, &c. the particulars of which are detailed by the answer) due, as alleged, from Shoemaker & Travers to them, and applied by an entry in their books, to the credit of Shoemaker & Travers, at the time of the receipt of the money aforesaid. They insisted, therefore, on the right of retaining it. To this answer there was a general replication, and the depositions of several witnesses were taken.

The Court below decreed, that the said Shoemaker & Travers were, and are, indebted to the United States, and that they became insolvent, and made an assignment as alleged in the bill, and that there was an outstanding unsettled demand existing in their favour, at the time of their insolvency, against the

defendants, arising from the voyage of the brigantine Deborah, and which is still unsettled and unpaid, but the Court is not satisfied that the defendants, being merely debtors to said insolvents, are by law liable to this process, and thereupon decree, that the said bill be dismissed. From this decree the present appeal was taken.

The *Attorney General*, for the appellants, argued, 1. That the prior right of the United States attached to all the property of Shoemaker & Travers, on the 6th of December, 1806, the time of their insolvency, and the date of the deed of assignment from them. It is immaterial whether the priority of the United States, in any case, be asserted under the act of 1797, c. 368. s. 5. or under that of 1799, c. 128. s. 65. The decisions, as to this point, under the one statute, are applicable to the other. It is insisted, that this is one of the cases specified by Congress, in which the debts due to the United States are to be first satisfied; a case in which the debtor, not having sufficient property to pay all his debts, has made a voluntary assignment thereof, for the benefit of his creditors. This is the allegation of the bill, and it is supported by the deed itself. Although the granting clause does not literally express it to include *all* the property of the debtors, yet the clause which gives the power to sell, by using the words "all the property of them, the said Shoemaker & Travers, and Jacob Shoemaker," clearly shows, that the assignment was intended to convey all their property. The very objects of the deed, as set forth in the recital,

aids this construction.—2. If, then, the priority of the United States has attached, a Court of Equity is the proper forum in which it should be asserted. A trust exists, and an account is to be taken. The Court of Chancery is the only tribunal that can enforce the trust, and take the account, having also the power of calling all the parties before it. Nor are the Chancery powers of the Circuit Court at all affected by the statute of Massachusetts of 1794, c. 64., giving a peculiar process, in the nature of a foreign attachment, by which the creditor may attach in the hands of the debtor of his debtor. The powers and practice of the Circuit Courts, in Chancery cases, are not to be controlled by the local laws of the states where those Courts sit. They are the same throughout the Union.—3. But even supposing that the United States have no priority in this case; they are, on the common footing of ordinary creditors, entitled to an account against Howland & Allen, and to the payment of any sum which, on a settlement of such account, may be found due from them to Shoemaker & Travers.

Mr. *Jones*, contra, insisted, 1. That the act of Congress only extended to executors and administrators, or to assignees, but not to the debtors of the debtors of the United States. A Court of Equity cannot have power to settle an account in this way, without some statutory provision to authorize the proceeding. The act of Congress gives no such authority. Shoemaker & Travers are not made parties to the bill, and a decree between the United States and the pre-

1819.

U. States
v.
Howland.

sent defendants, would not bind in a suit between the .defendants, and Shoemaker & Travers. Nor is it too late, in the appellate Court, to take advantage of the want of parties.[a] 2. The cases are uniform, that in order to enable the priority of the United States to attach upon this ground, the assignment must be of all the debtor's property.[b] There is here no evidence, either in the deed or in the depositions, that this assignment embraced all the property of Shoemaker & Travers. The power to sell all the property cannot be construed to enlarge the granting clause, which merely refers to the property mentioned in the schedule annexed to the deed. The defendants claim a balance from Shoemaker & Travers, and the right to apply the money received to the liquidation of that balance. They had acquired a special lien upon the money for the payment of this balance, long before the alleged act of insolvency. The Court has repeatedly determined, that if before the right of preference to the United States has accrued, the debtor has made a *bona fide* conveyance of his estate, or has mortgaged it, to secure a debt, the property is devested out of the debtor, and cannot be made liable to the claim of the United States.[c] The spirit of these decisions is, that any *bona fide* lien will be protected, and not merely an actual mortgage or hypothecation. All specific liens are highly fa-

a Russell v. Clarke's Executors, 7 *Cranch*, 98.

b United States v. Fisher, 2 *Cranch*, 358; United States v. Hooe, 3 *Cranch*, 73.

c United States v. Fisher, 2 *Cranch*, 390. United States v. Hooe, 3 *Cranch*, 90.

1819.

U: States
v.
Howland.

voured by the law; such as that of a factor who has advanced his money on the credit of the goods, or a ship-owner who having let out his ship for their transportation, has a right to the same security. It is true, that the Court has said, that the lien of a judgment creditor shall not be protected as against the prior right of the United States. But that is upon the ground that the judgment is a mere general lien, not affecting the *jus disponendi* of the owner of the property, nor vesting any specific interest in the creditor.

*Feb. 17th.*  Mr. Chief Justice MARSHALL delivered the opinion of the Court.   The bill in this case was filed by the United States in the Circuit Court for the district of Massachusetts, to recover from the defendants a sum of money in their hands, alleged to be the money of Jacob Shoemaker and Charles R. Travers, merchants and partners, who are stated to be insolvents, and to be indebted to the United States for duties.

It appears, that Shoemaker and Travers, on the 6th day of December, 1806, executed an indenture, in which, reciting that they are justly indebted to divers persons, whose names are expressed in a list thereto annexed, and are unable at present to pay the said debts, they assign to trustees therein-mentioned, all and singular the estate and effects contained in a schedule annexed, in trust, to pay the debt due to the enumerated creditors, and first that due to the United States. The schedule contains many items of property, and among others the proceeds of the

cargo of the Deborah, then at sea. The Deborah was the property of Howland and Allen; and on her coming into port, her captain delivered to her owners a sum of money which he had received in Guadaloupe for Shoemaker and Travers, and which is in the schedule annexed to the deed of assignment already mentioned. At the hearing the Circuit Court dismissed the bill, in the opinion that it was not sustainable. From this decree the United States have appealed to this Court, and now insist,

1819.

U. States
v.
Howland.

1. That it is a case in which a Court of Equity has jurisdiction.

2. That the United States are entitled to priority, this being a case within the provisions of the act of Congress.

On the first point no difficulty would be found, had the proper parties been before the Court. A trust exists, and an account would be proper, to ascertain the sum due from Howland and Allen to Shoemaker and Travers. The case, even independent of these circumstances, would be proper for a Court of Chancery, but for the act of Massachusetts, which allows a creditor to sue the debtor of his debtor. Still the remedy in Chancery, where all parties may be brought before the Court, is more complete and adequate, as the sum actually due may be there, in such cases, ascertained with more certainty and facility; and as the Courts of the Union have a Chancery jurisdiction in every state, and the judiciary act confers the same Chancery powers on all, and gives the same rule of decision, its jurisdiction in Massachusetts must be the same as in other States.

*The right of the U. S. to proceed, in equity, in the Circuit Court, against the debtor of their debtor, they claiming a priority under the act of Congress, is not restrained by the local law of Massachusetts, allowing the creditor to proceed against the debtor or of his debtor, at law, by a peculiar process.*

*The Circuit Courts have the same Chancery jurisdiction, powers, and rules of decision, in every State.*

1819.

U. States
v.
Howland.

Where the
U. S. claim
priority on the
ground of the
debtor having
made an as-
signment of all
his property,
unless the deed
of assignment
shows it to
include the
whole, the *onus*
is thrown upon
the U. S. to
show that it
does include
all.

This being a case of which a Court of Chancery may take jurisdiction, we are next to inquire, whether it is one in which the United States are entitled to priority. .

This depends on the fact whether the deed cf assignment executed by Shoemaker and Travers was a conveyance of all their property. The words of the deed, after reciting the motives which led to it, and the consideration, are " have granted, &c., and by these presents, do grant," &c., " all and singular the estate and effects which is contained in the schedule hereunto annexed, marked A." The caption of the schedule is, " schedule of property assigned by Shoemaker and Travers, and Jacob Shoemaker, to the creditors of Shoemaker and Travers."

The deed then conveys only the property contained in the schedule, and the schedule does not purport to contain all the property of the parties who made it. In such a case, the presumption must be, that there is property not contained in the deed, unless the contrary appears. The *onus probandi* is thrown on the United States.

It is contended for the United States, that the clause which gives the power to sell, by using the words " all the property of them, the said Shoemaker and Travers, and Jacob Shoemaker," indicate clearly that this deed does convey all their property. But these words are explained and limited by those which follow, so as to show that the word " all" is used in reference to the schedule, and means all the property in the schedule. The depositions do not aid the deed. The question, whether the whole

property is assigned, is still left to conjecture, and this being the fact on which the preference of the United States is founded, ought to be proved. Not being proved, the Court is of opinion, that this is not a case in which it can be claimed.

But the United States are the creditors of Shoemaker and Travers, and have a right as creditors to proceed against their property in the hands of Howland and Allen. They have a right to so much of that property as remains after the debt due to Howland and Allen shall be satisfied. But to ascertain this amount, an account between Howland and Allen and the debtors to the United States should be taken, and the persons against whom the account is to be taken should be parties to the suit. Although, if they cannot be found within the district of Massachusetts, the process of the Court cannot reach them, still they may appear without coercion. At any rate, an account ought to be taken, since the matter controverted between the parties, is more proper to be stated by a master than to be decided in Court without such report.

The decree is to be reversed, and the cause remanded, with directions to allow the plaintiffs to amend the bill and make new parties. The United States will, of course, be at liberty to take testimony, showing the assignment to be of all the property of the parties who made it.[a]

DECREE. This cause came on to be heard on the transcript of the record of the Circuit Court for the district of Massachusetts, and was argued by counsel.

*Margin notes:*

1819.

U. States
v.
Howland.

Upon a bill filed by the U. S., proceeding as ordinary creditors, against the debtor or of their debtor, for an account, &c., the original debtor to the U. S. ought to be made a party, and the account taken between him and his debtor.

---

a Mr. Justice STORY did not sit in the Court below in this cause.

On consideration whereof, this Court is of opinion, that the Circuit Court erred in dismissing the bill of the plaintiffs, and that their decree ought to be reversed, and it is hereby reversed and annulled : And it is further ordered, that the said cause be remanded to the said Circuit Court, with directions to allow the plaintiffs to amend their bill and make new parties.[a]

a The act of March 3, 1797, c. 368. entitled, " an act to provide more effectually for the settlement of accounts between the United States and receivers of public money," declares, (s. 5.) "That where any revenue officer or other person, hereafter becoming indebted to the United States, by bond or otherwise; shall become insolvent, or where the estate of any deceased debtor, in the hands of executors or administrators, shall be insufficient to pay all the debts due from the deceased, the debt due to the United States shall be first satisfied ; and the priority hereby established shall be deemed to extend, as well to cases in which a debtor, not having sufficient property to pay all his debts, shall make a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor, shall be attached by process of law, as to cases in which an act of legal bankruptcy shall be committed."

The collection act of March 2, 1799, c. 128. s. 65. provides, that " in all cases of insolvency, or where any estate in the hands of executors, administrators, or assignees, shall be insufficient to pay all the debts due from the deceased, the debt or debts due to the United States, on any such bond or bonds, shall be first satisfied ; and any executor, administrator, or assignee, or other person, who shall pay any debt due by the person or estate from whom, or for which, they are acting, previous to the debt or debts due to the United States from such person or estate, being first duly satisfied and paid, shall become answerable, in their own person or estate, for the debt or debts so due to the United States, or so much thereof as may remain due and unpaid, in the proper Court having cognizance thereof:" And, " That if the principal in any bond which shall be given to the United States for duties on goods, wares

or merchandize imported, or other penalty, either by himself, his factor, agent, or other person, for him, shall be insolvent, or if such principal being deceased, his or her estate and effects, which shall come to the hands of his or her executors, administrators, or assignees, shall be insufficient for the payment of his or her debts, and if in either of the said cases, any surety on the said bond or bonds, or the executors, administrators or assignees of such surety, shall pay to the United States the money due upon such bond or bonds, such surety, his or her executors, administrators, or assignees, shall have and enjoy the like advantage, priority, or preference, for the recovery and receipt of said moneys, out of the estate and effects of such insolvent, or deceased principal, as are reserved and secured to the United States ; and shall and may bring and maintain a suit or suits, upon the said bond or bonds, in law or equity, in his, her, or their own name, or names, for the recovery of all moneys paid thereon. And the cases of insolvency mentioned in this section shall be deemed to extend, as well to cases in which a debtor, not having sufficient property to pay all his or her debts, shall have made a voluntary assignment thereof for the benefit of his or her creditors, or in which the estate and effects of an absconding, concealed, or absent debtor, shall have been attached by process of law, as to cases in which a legal act of bankruptcy shall have been committed."

Under these acts the following points have been determined : 1. That the preference given to the United States by the act of 1797, c. 368. s. 5. is not confined to revenue officers, and persons accountable for public money, but extends to *debtors* of the United States *generally.* United States v. Fisher, 2 *Cranch,* 358. 391. 395. And that the collection act of 1799, c. 128. s. 65. does not repeal the 5th section of the act of 1797, c, 368. though the 65th section of the collection act applies only to bonds taken for those duties on imports and tonnage, which are the objects of the act. *Ib.* 394. The United States are entitled to their preference on a debt due to them by the insolvent as endorser of a bill of exchange, as well as on any other debt. The United States v. Eisher, 2 *Cranch,* 358.

2. The acts do not create a *lien*, nor extend to a *bona fide* conveyance by the debtor to a third person in the ordinary course of business, or to a mortgage to secure a debt, or, to a case where the debtor's property is seized under a *fi. fa.*, before the right of preference has accrued to the United States. United States v. Fisher, 2 *Cranch*, 390. United States v. Hooe, 3 *Cranch*, 73. 90. Thelluson v. Smith, *ante, vol.* II. *p.* 396. 424. But the United States are not precluded from asserting their priority, by a voluntary assignment made by the debtor, under such circumstances as would be a fraud on the bankrupt laws. Harrison v. Sterry, 5 *Cranch*, 289. 301. A mortgage of part of his property made by a collecor of the customs to his surety in his official bond, to indemnify the surety thereon, and also to secure him from his existing and future endorsements for the mortgagor at the bank, is valid against the United States, although it turns out that the collector was unable to pay all his debts at the time the mortgage was given, and although the mortgagee knew at the time of taking the mortgage the mortgagor was indebted to the United States. United States v. Hooe, 3 *Cranch*, 73. The priority of the United States is not affected by an assignment under a commission of bankruptcy. United States v. Fisher, 2 *Cranch*, 358.

3. A mere state of insolvency or inability in a debtor of the United States, to pay all his debts, gives no right of preference to the United States, unless it is accompanied by a voluntary assignment of his property for the benefit of his creditors ; or, unless his estate and effects shall be attached as those of an absent, concealed, or absconding debtor ; or, unless he has committed some legal act of bankruptcy or insolvency. United States v. Fisher, 2 *Cranch*, 358. United States v. Hooe, 3 *Cranch*, 73. Prince v. Bartlett, 8 *Cranch*, 431. Thelluson v. Smith, *ante, vol.* II. *p.* 396. 424. The priority is limited to some one of these particular cases *when the debtor is living* ; but it takes effect generally, *if he is dead.* United States v. Fisher, 2 *Cranch*, 390. In this last cited case, Mr. Chief Justice MARSHALL intimated his own opinion, that it did not create a *devastavit* in the administration of effects, and would require

notice in order to bind the executor, or administrator, or
assignee. *Ib.* 391. note *a.* .

4. The assignment must be of ALL the debtor's property.
United States v. Hooe, 3 *Cranch*, 73. 91. If, however, a tri-
vial portion of an estate should be left out for the purpose of
evading the act, it would be considered as a fraud upon the
law, and the parties would not be allowed to avail themselves
of such a contrivance. But where a *bona fide* conveyance of
part is made, not to avoid the law, but to secure a fair credi-
tor, the case is not within the acts. *Ib.* 91.

5. The priority attaches at the time of the insolvency mani-
fested in any of the modes specified in the acts, whether a suit
has been commenced by the United States or not. United
States v. Fisher, 2 *Cranch*, 395.

6. In the distribution of a bankrupt's effects in this country,
the United States are entitled to a preference, although the
debt was contracted by a foreigner in a foreign country, and
although the United States had proved their debt under a com-
mission of bankruptcy in this country, and had voted for an
assignee. The law of the place, where the contract is made,
is, generally speaking, the law of the contract ; *i. e.* it is the
law by which the contract is to be expounded. But the right
of priority forms no part of the contract itself. It is extrinsic,
and is rather a personal privilege dependent on the law of the
place where the property lies, and where the court sits which
is to decide the cause. Harrison v. Sterry, 5 *Cranch*, 289.
298.

7. Though a judgment gives to a judgment creditor a lien on
the debtor's lands, and a preference over all subsequent judg-
ment creditors, yet the acts defeat this preference in favour of
the United States in the cases specified. Thelluson v. Smith,
*ante, vol.* II. *p.* 396. 423.