THE FLORIDA.

(District Court, S. D. New York.     March 24, 1910.)

1. SHIPPING (§ 207*)—LAWS AFFECTING RIGHTS—STATUTES LIMITING LIABILITY OF SHIPOWNERS.

The statutes limiting the liability of shipowners (Rev. St. § 4283 [U. S. Comp. St. 1901, p. 2943], and Act June 26, 1884, c. 121, § 18, 23 Stat. 57 [U. S. Comp. St. 1901, p. 2945]) were enacted for the public benefit, to encourage shipbuilding and the employment of ships in commerce, and are binding upon the United States government when as a shipper it sustains a loss.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 555, 643, 644; Dec. Dig. § 207.*]

2. UNITED STATES (§ 76*)—GOVERNMENT AS SUITOR—PROCEEDINGS FOR LIMITATION OF LIABILITY.

Where, in proceedings by a shipowner for limitation of liability, the United States appears and files a claim for damages, it has a lien on the property or fund surrendered differing in no respect from that of other damage claimants and is entitled to no preference over them in the distribution of the fund.

[Ed. Note.—For other cases, see United States, Cent. Dig. § 59; Dec. Dig. § 76.*]

In Admiralty. In the matter of petition of the Lloyd Italiano Societa di Navigazione, as owner of the steamship Florida, for limitation of liability. On motion by the United States for an order giving preference to its claim for cargo lost in collision. Motion denied.

As the result of collision on the high seas between the Italian steamship Florida and the British steamship Republic, the latter vessel became a total loss.

The Florida, though much injured, came into this port and began the above-entitled proceeding for limitation of liability pursuant to U. S. Revised Statutes, § 4283 et seq. (U. S. Comp. St. 1901, p. 2943).

The United States had shipped on the Republic about $60,000 worth of cargo. So far as shown by the record, this shipment was made in exactly the same way and by exactly the same methods as in the case of a private shipper.

In this proceeding the United States has filed a claim setting forth its loss in the usual way, and now moves for an order that it be decreed "to receive payment in full for the amount of its loss before the fund paid into court as the result of the sale of the Florida in these proceedings shall be prorated among the other claimants." It is admitted that the fund is wholly insufficient to pay in full all the parties justly entitled.

Addison S. Pratt, Asst. U. S. Atty., of New York City, for the motion.

Samuel Park, Frederick M. Brown, William S. Montgomery, and James Forrester, all of New York City, opposed.

HOUGH, District Judge (after stating the facts as above). There are at least two reasons in my judgment for denying this motion. The first arises from a very broad and universally acknowledged proposition of law which in its application to this case is new. The second is based upon the peculiar nature of this proceeding, and the effect thereof upon any person or corporation, including the sovereign, who chooses to come into it.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

[1] That "nullum tempus occurrit regi" is a maxim neither disputed nor disputable in its application either to a monarch or to the sovereignty of the people as embodied in any form of government. But when the ground of the doctrine is investigated it has been declared by the Supreme Court in Fink v. O'Neil, 106 U. S. at page 281, 1 Sup. Ct. at page 332, 27 L. Ed. 196, that it rests, "not upon any notion of prerogative, * * * the real ground is a great principle of public policy, which belongs alike to all governments, that the public interest should not be prejudiced by the negligence of public officers to whose care they are confided." It was accordingly there held that the United States was bound by the general language of a statute protecting homesteads from seizure and sale by virtue of execution, and the ground of decision was that the court was satisfied that the "statute which proposed only to regulate the mode of proceeding in suits did not divest the public of any right and did not violate any principle of public policy."

It therefore becomes necessary under the guidance of the highest court to examine any statute of limitations, whether the limitation be a contraction of time or a restriction of rights, to ascertain whether that statute is obnoxious not to the prerogative or power of republican governments either state or national, but whether the restriction of the statute is for the public good when applied to that sovereignty which is the embodiment of the people's power.

If this test be applied to the statute for limiting the liability of shipowners, the act has survived the test in the judgment of the same court. In Butler v. Boston & S. S. S. Co., 130 U. S. at page 549, 9 Sup. Ct. at page 616, 32 L. Ed. 1017, Bradley, J., said:

"If we look at the ground of the law of limited responsibility of shipowners, * * * that ground is that, for the encouragement of shipbuilding and the employment of ships in commerce, the owners shall not be liable beyond their interest in the ship and freight for the acts of the master or crew done without their privity or knowledge. It extends to liability for every kind of loss, damage, and injury. This is the language of the maritime law, and it is the language of our statute which virtually adopts that law."

It seems to me that no plainer statement of the view that this act being for the benefit of commerce is for the public benefit could be made.

In this litigation it is neither shown nor suggested that the government in accepting its pro rata share of the proceeds of the Florida is suffering from the negligence or default of any of its officers or employés. The claim made (viewed from the standpoint of declaring the act inapplicable to the government) clearly rests upon prerogative only, and that ground for such a position has in my judgment never been adopted by any American court. It is not thought necessary to elaborate this view, which as the first application of a wide principle to a particular case is not important when stated by a court of first instance; but if correct, as I believe it to be, it entirely disposes of the proposition advanced.

[2] Taking up the second reason, it is admitted that the United States, among others, became entitled, as soon as it lost its goods by

the collision referred to, to a maritime lien or privilege. It acquired jus in re, or proprietary interest in the Florida, which when enforced by admiralty process in rem relates back to the time of the collision. The John G. Stevens, 170 U. S. at page 122, 18 Sup. Ct. 544, 42 L. Ed. 969. The United States, therefore, is in the position of a lienor whose lien (unless protected by its sovereignty) has been divested by judicial sale and transferred to the fund now in court and against which this claim is made.

It may be admitted that the United States need not have come into this proceeding, that it might have proceeded at common law against the owners of the Florida, and even that its lien would have survived (also by reason of sovereignty) the judicial sale that produced this fund. (These admissions are made wholly for the sake of argument.) None, however, of the courses indicated has been taken; the government has filed its claim, which necessarily rests upon and represents the jus in re that arose by virtue of and eo instanti the collision.

Unless therefore in this proceeding it can be shown that when the United States has a lien not different in kind from those of other shippers and other claimants against the same fund, its lien is to be preferred in payment to other similar liens; it must prorate with other claimants similarly situated and take its rank in the order of maritime priorities.

It seems to me that this proposition cannot be maintained under Conard v. Atlantic Ins. Co., 1 Pet. 386, 7 L. Ed. 189, and is wholly inconsistent with numerous cases holding that a judgment obtained by the sovereign will rank in lien and order of payment just as if it had been obtained by a private citizen. Cottrell v. Pierson (C. C.) 12 Fed. 805; Prince v. Bartlett, 8 Cranch. 431, 3 L. Ed. 614, and cases there cited.

Upon the reason of the matter, if this be the rule as to judgments, much more is it the rule as to maritime liens, for a judgment creditor, as pointed out by Story, J., in the Conard Case, never has jus in re; he can rise no higher than jus ad rem. Persons possessing jura in re have a species of proprietary interest in common, and I can imagine no more inequitable doctrine, nor one more opposed to public interests, than to hold that, when by a statute of the United States a large number of maritime lienors are compelled to prorate their liens in the interests of commerce, the United States alone shall not be called upon to make this concession to the general weal.

The motion is denied, and an order may be entered denying the prior claim of the government.