**Thomas Jerry MYERS**

v.

**UNITED STATES of America.**

No. 78–0816.

United States District Court,
W. D. Louisiana,
Shreveport Division.

Jan. 11, 1980.

---

David M. Touchstone, Shreveport, La., for plaintiff.

M. Carr Ferguson, John F. Murray, Joseph E. Earnest, Dept. of Justice, Washington, D. C., for defendant.

## OPINION

STAGG, District Judge.

On July 5, 1978, plaintiff Thomas Jerry Myers (Myers) instituted this action, contending that the Commissioner of the Internal Revenue Service (IRS) wrongfully levied on his property pursuant to two allegedly discharged tax liens. Myers sought injunctive relief and a declaration that the levy was wrongful, to clear his title to the property. This court substituted the United States as party defendant for the Commissioner, and held a preliminary injunction hearing consolidated with trial on the merits on July 26, 1978. Prior to the hearing, the court ordered the property released from seizure but required Myers to deposit into the Registry of the Court the amount of the tax assessments and interest which were secured by the liens.

The court is called upon to determine whether the liens were discharged by the sheriff's sale of the property on June 7, 1978. At the sale, the foreclosing creditor bought the property for less than the value of its superior security interest; consequently, the sheriff authorized the cancellation of all inferior liens, including the two tax liens. The government contends that the liens were not properly discharged because the foreclosing creditor failed to comply with the provisions of 26 U.S.C. § 7425.[1] However, Myers argues that the liens were

---

1. 26 U.S.C. § 7425. Discharge of liens

(a) Judicial proceedings.—If the United States is not joined as a party, a judgment in any civil action or suit described in subsection (a) of section 2410 of title 28 of the United States Code, or a judicial sale pursuant to such a judgment, with respect to property on which the United States has or claims a lien under the provisions of this title—

(1) shall be made subject to and without disturbing the lien of the United States, if notice of such lien has been filed in the place provided by law for such filing at the time such action or suit is commenced, or

(2) shall have the same effect with respect to the discharge or divestment of such lien of the United States as may be provided with respect to such matters by the local law of the place where such property is situated, if no notice of such lien has been filed in the place provided by law for such filing at the time such action or suit is commenced or if the law makes no provision for such filing. If a judicial sale of property pursuant to a judgment in any civil action or suit to which the United States is not a party discharges a lien of the United States arising under the provisions of this title, the United States may

properly discharged through the cancellation on the public records, and that a construction of § 7425 as urged by the government would improperly interfere with the state's laws which are designed to protect the sanctity of land titles.

If the court determines that the tax liens were properly discharged by the sheriff's

claim, with the same priority as its lien had against the property sold, the proceeds (exclusive of costs) of such sale at any time before the distribution of such proceeds is ordered.

(b) Other sales.—Notwithstanding subsection (a) a sale of property on which the United States has or claims a lien, or a title derived from enforcement of a lien, under the provisions of this title, made pursuant to an instrument creating a lien on such property, pursuant to a confession of judgment on the obligation secured by such an instrument, or pursuant to a nonjudicial sale under a statutory lien on such property—

(1) shall, except as otherwise provided, be made subject to and without disturbing such lien or title, if notice of such lien was filed or such title recorded in the place provided by law for such filing or recording more than 30 days before such sale and the United States is not given notice of such sale in the manner prescribed in subsection (c)(1); or

(2) shall have the same effect with respect to the discharge or divestment of such lien or such title of the United States, as may be provided with respect to such matters by the local law of the place where such property is situated, if—

(A) notice of such lien or such title was not filed or recorded in the place provided by law for such filing more than 30 days before such sale,

(B) the law makes no provision for such filing, or

(C) notice of such sale is given in the manner prescribed in subsection (c)(1).

(c) Special rules.—

(1) Notice of sale.—Notice of a sale to which subsection (b) applies shall be given (in accordance with regulations prescribed by the Secretary or his delegate) in writing, by registered or certified mail or by personal service, not less than 25 days prior to such sale, to the Secretary or his delegate.

(2) Consent to sale.—Notwithstanding the notice requirement of subsection (b)(2)(C), a sale described in subsection (b) of property shall discharge or divest such property of the lien or title of the United States if the United States consents to the sale of such property free of such lien or title.

(3) Sale of perishable goods.—Notwithstanding the notice requirement of subsection (b)(2)(C), a sale described in subsection (b) of property liable to perish or become greatly reduced in price or value by keeping, or which cannot be kept without great expense, shall discharge or divest such property of the lien or title of the United States if notice of such sale is given (in accordance with regulations prescribed by the Secretary or his delegate) in writing, by registered or certified mail or by personal service, to the Secretary or his delegate before such sale. The proceeds (exclusive of costs) of such sale shall be held as a fund subject to the liens and claims of the United States, in the same manner and with the same priority as such liens and claims had with respect to the property sold, for not less than 30 days after the date of such sale.

(d) Redemption by United States.—

(1) Right to redeem.—In the case of a sale of real property to which subsection (b) applies to satisfy a lien prior to that of the United States, the Secretary or his delegate may redeem such property within the period of 120 days from the date of such sale or the period allowable for redemption under local law, whichever is longer.

(2) Amount to be paid.—In any case in which the United States redeems real property pursuant to paragraph (1), the amount to be paid for such property shall be the amount prescribed by subsection (d) of section 2410 of title 28 of the United States Code.

(3) Certificate of redemption.—

(A) In general.—In any case in which real property is redeemed by the United States pursuant to this subsection, the Secretary or his delegate shall apply to the officer designated by local law, if any, for the documents necessary to evidence the fact of redemption and to record title to such property in the name of the United States. If no such officer is designated by local law or if such officer fails to issue such documents, the Secretary or his delegate shall execute a certificate or redemption therefor.

(B) Filing.—The Secretary or his delegate shall, without delay, cause such documents or certificate to be duly recorded in the proper registry of deeds. If the State in which the real property redeemed by the United States is situated has not by law designated an office in which such certificate may be recorded, the Secretary or his delegate shall file such certificate in the office of the clerk of the United States district court for the judicial district in which such property is situated.

(C) Effect.—A certificate of redemption executed by the Secretary or his delegate shall constitute a prima facie evidence of the regularity of such redemption and shall, when recorded, transfer to the United States all the rights, title, and interest in and to such property acquired by the person from whom the United States redeems such property by virtue of the sale of such property.

sale, Myers is entitled to a reimbursement of the funds he paid into the Registry of the Court, plus accrued interest. If not, the government is entitled to the funds to satisfy the assessment secured by the liens. Jurisdiction is based upon 28 U.S.C. § 1340 [2] and 26 U.S.C. § 7426(a)(1).[3]

## I. FACTUAL BACKGROUND

For the most part, the facts are not at issue. The court makes the following findings of fact based upon the stipulations, the exhibits submitted by both parties, and the testimony adduced at the hearing.

(1) Fitts and Associates, Inc. (Fitts) purchased the property in question from Jack T. Moore on February 13, 1975, and executed a vendor's lien for $21,333.35. The vendor's lien was recorded in the mortgage records of Caddo Parish, Louisiana, on February 20, 1975.

(2) On March 31, 1975, Fitts executed a Future Holder mortgage for $250,000, which was recorded on April 2, 1975.

(3) The government properly filed a notice of a federal tax lien in the amount of $17,754.18 on April 5, 1978. The lien attached to all property and rights to property of the taxpayer, Fitts.

(4) On April 7, 1975, the vendor's lien was subordinated to the Future Holder mortgage.

(5) On April 21, 1978, the Peoples Bank and Trust of Blanchard, Inc. (Peoples) instituted executory proceedings to foreclose on the property as holders of the note secured by the superior Future Holder mortgage.

(6) The Sheriff of Caddo Parish seized the property pursuant to the foreclosure proceedings, and issued a notice of seizure which was recorded on April 24, 1978.

(7) The next day, April 25, 1978, the government properly filed a second tax lien in the amount of $15,809.53, which also attached to all property rights of Fitts.

(8) As mentioned previously, the sheriff's sale of the property was held on June 7, 1978. The sheriff executed and issued a Sheriff's Deed to Peoples, which had purchased the property for $170,000, and authorized the Caddo Parish Clerk of Court to cancel all inferior liens on the property, including the two tax liens. Pursuant to the sheriff's authorization, the inferior liens were all cancelled on the same day.

(9) Neither the Secretary nor the district director were given written notice of the sheriff's sale at least 25 days prior to the sale, as required by 28 U.S.C. § 7425(c)(1). In fact, no written notice of the sale was ever given.

(10) On or about June 14, 1978, Myers began negotiations with Peoples to buy the property. Kenneth O. Arnold, the controlling shareholder and chairman of the board of Peoples, and a longtime friend of Myers', sought approval from the board of the proposed sale to Myers and offered the directors the opportunity to share in the deal. Ultimately, the sale to Myers was approved, with the agreement that Arnold and Jack E. Collum, the president of Peoples, were to share in any profit made by Myers in reselling the property. It is not clear from the record whether Arnold and Collum would also share in any loss from a resale, nor are the financial details of Arnold's and Collum's involvement evident beyond a description of the deal as a "gentleman's agreement".

**2.** 28 U.S.C. § 1340 Internal revenue; customs duties

The district courts shall have original jurisdiction of any civil action arising under any Act of Congress providing for internal revenue, or revenue from imports or tonnage except matters within the jurisdiction of the Customs Court.

**3.** 26 U.S.C. § 7426. Civil Actions by persons other than taxpayers

(a) Actions permitted.—

(1) Wrongful levy.—If a levy has been made on property or property has been sold pursuant to a levy, any person (other than the person against whom is assessed the tax out of which such levy arose) who claims an interest in or lien on such property and that such property was wrongfully levied upon may bring a civil action against the United States in a district court of the United States. Such action may be brought without regard to whether such property has been surrendered to or sold by the Secretary or his delegate.

(11) On June 16, 1978, Peoples sold the property to Myers for $185,000 by warranty deed recorded June 19, 1978.

(12) On June 21, 1978, IRS agents properly served a levy against the property on a Fitts representative and a Notice of Seizure on Myers; the agents also posted notices of seizure on the property and secured it.

## II. CONCLUSIONS OF LAW

26 U.S.C. § 7425 [4] sets out the methods by which an inferior tax lien may be validly discharged or cancelled following a foreclosure sale. Section 7425 draws a distinction between "judicial proceedings", in which the government must be joined as a party in a foreclosure suit for a sale pursuant to the judgment to validly discharge the tax liens; and "other sales", in which the Secretary or the district director must be given written notice at least 25 days before the sale. If a foreclosing creditor does not comply with the statute either by failing to join the government as a party or by failing to give the requisite notice, as the case may require, inferior tax liens will not be discharged by the foreclosure sale, but will follow the property into the hands of a third party.

To resolve the issue of whether the tax liens were properly discharged in this case, the court must determine whether Louisiana's executory process is a "judicial proceeding", or whether a foreclosure sale pursuant to executory process is an "other sale", as those terms are used in the statute. In light of the intent of Congress as revealed in the legislative history, the court is of the opinion that executory process is not a "judicial proceeding" and must therefore be governed by the statute's provisions relating to "other sales".

The following excerpt from the Senate Report on the Federal Tax Lien Act of 1966, of which § 7425 is a part, explains the purpose of the bill and the distinction between "judicial proceedings" and "other sales" in § 7425:

Under present law, a junior Federal tax lien may be discharged on foreclosure of a senior security interest. Such foreclosure may occur in a plenary judicial action, or, under the law of some States, by nonjudicial foreclosure pursuant to a power of sale contained in the senior security instrument. In addition, in some States, foreclosure of a senior security interest may be accomplished by sale of the property by a judicial officer pursuant to a judgment entered under a "confession of judgment" signed by the debtor (typically in the security interest instrument itself). Where State law so provides, a junior Federal tax lien may be extinguished without the United States either being made a party to the proceeding or having any actual notice. As a result, under current law tax liens are sometimes extinguished without the United States having actual notice of the proceedings, under circumstances where it is not possible for the Internal Revenue Service to take steps to protect the United States in the collection of its tax revenues.

Where there is a plenary judicial proceeding and the Government, as a junior lienor, must be joined for its interests to be discharged in the proceeding, the present procedure works well. However, in other cases where the interests of junior lienors may be eliminated without notice, it appears that the interests of the Government are not presently sufficiently protected. Although legitimate local considerations may preclude requiring the Government (in other than plenary proceeding) to be joined as a party for its interests under a tax lien to be discharged, there does not appear to be any reason why in these cases there should not be a timely notice of the proceedings to the Government where notice of its tax lien is on file. The requirement of notice gives the Government an opportunity to review its position and determine the appropriate action without placing an undue burden on a foreclosing creditor.

---

**4.** *See* text at note 1, *supra.*

As explained below, the bill adds a new provision to the internal revenue laws requiring the Government to be made a party in a plenary proceeding to discharge a tax lien. The bill also makes provision for a timely notice to the Government where it has the status of a junior lienor and there is no plenary proceeding.

(1) Plenary foreclosure actions [§ 7425(a)]

The bill provides that in a plenary judicial proceeding where the Government has properly filed notice of a tax lien before the proceedings commence, but the Government is not joined as a party in the court proceeding, a judgment as to the property is not to disturb a tax lien or claim of a tax lien of the Government on this property. The same result is to occur when the property is sold pursuant to the judgment; the lien on the property continues into the hands of the third person. Where the Government is joined in these proceedings no change is made by the bill in the present operation of local law.

Where a notice of tax lien is not filed before a plenary proceeding commences—even in those cases where the filing is not required, such as in the case of a special lien for estate and gift taxes—a judicial sale is to have the same effect with respect to a tax lien as local law provides with respect to such matters. One exception is provided to this rule: where the Government is not joined as a party and the sale discharges the tax lien, the Government may still assert its claim against the proceeds of the sale at any time before their distribution is ordered with the same force as the lien had against the property sold.

(2) Other foreclosure proceedings [§ 7425(b)]

The bill provides that, in the case of all other foreclosure proceedings, where timely notice of the proceedings is given to the Government, the Government's claim to property under a tax lien is to be discharged in the manner provided by local law.

Where foreclosures covered by this provision are made without proper notice to the Government, the bill provides that this does not affect the Government's claim under a tax lien (as where the Government is not joined in a judicial foreclosure). In these cases, the Government's claim continues against the property into the hands of a third party. On the other hand, where notice of the Government's claim under a tax lien is not filed (even in those cases where filing is not required), or where the Government is notified of the proceeding, a sale has the same effect on the claim as local law provides with respect to similar claims. (This is the same result as where the Government is not joined as a party in a plenary proceeding where its lien is not on file.)

S.Rep. No. 1708, 89th Cong., 2d Sess. (1966), 1966 U.S.Code Cong. & Admin.News, pp. 3722, 3748–9.

■ Although at first blush executory process would appear to be a "judicial proceeding", it is clear from the legislative history that Congress intended only *plenary* judicial proceedings to be covered by that term. Louisiana courts have recognized executory process as an expedited *in rem* action. *Louisiana Bank and Trust Co. v. Pernici*, 372 So.2d 788 (La.App.2d Cir. 1979); *Hood Motor Company, Inc. v. Lawrence*, 320 So.2d 111 (La.1975). Executory process is "used to effect the seizure and sale of property, without previous citation and judgment",[5] and is based upon the confession of judgment by the debtor in the act creating the privilege. The Louisiana Supreme Court has even held it constitutionally permissible for a clerk of court to sign the order of seizure and sale. *Hood Motor Company, Inc. v. Lawrence, supra.* Executory process is unquestionably "judicial" in that it requires use of the courts, but it is clearly not a *plenary* judicial proceeding and must be governed by § 7425(b).

■ In this case, both tax liens were properly filed and recorded more than thir-

5. La.Code Civ.Pro. Art. 2631 (1960).

ty days before the sheriff's sale,[6] but prior notice of the sale was not given as required by § 7425(c)(1). Under these circumstances, § 7425(b) dictates that the June 7 sale be considered "subject to and without disturbing" the tax liens.

■ In addition, the court finds that the levy and seizure of the property were proper under 26 U.S.C. § 6331.[7] There is no requirement that the levy be accomplished while the property is in the hands of the taxpayer; it is sufficient that there are valid tax liens on the property. *G. M. Leasing Corp. v. United States,* 429 U.S. 338, 97 S.Ct. 619, 50 L.Ed.2d 530 (1977).

■ Finally, the court agrees with the government's contention that redemption is not the only remedy available to enforce tax liens in situations like the present one. Section 7425(d) *allows* redemption, but does not require it, as evidenced by the use of the word "may" in the provision. The court has found no authority which suggests that redemption is the sole available remedy. Thus, the award to the government of the funds presently in the Registry of the Court is not improper.

■ Myers contends, however, that the Tenth Amendment to the United States Constitution prohibits the federal government from interfering with Louisiana's public records system by mandating that inferior tax liens remain valid even if cancelled on the public records. This result, he argues, allows a good faith third party purchaser to buy land upon which all liens have evidently been cancelled on the public records yet be subject to government levy and

seizure. Myers argues that confidence in the public records will be destroyed if the public cannot rely upon mortgage and lien cancellations properly recorded.

However, the foregoing contentions fail to state a constitutional problem in that they reflect a misunderstanding of the Louisiana public records doctrine. Louisiana Civil Code Articles 2265 and 2266 provide that certain interests must be recorded or else they will be "utterly null and void" as to third parties. This "negative formulation" indicates that, "where the law applies, what is *not* recorded is not effective." Redmann, *The Louisiana Law of Recordation: Some Principles and Some Problems,* 39 Tul.L.Rev. 491, 492 (1965) (emphasis added). This does not mean that the reverse is also true. What *is* recorded is not *necessarily* effective, for recordation can never be the *source* of rights.[8] In other words, an invalid document does not become effective merely because it is recorded, and persons who view the recorded invalid document have no right to *presume* that the document is valid.

Thus, Myers is incorrect in asserting that public confidence in the recordation system will break down if tax liens which appear to be cancelled are in fact valid, because the public has never had a right to presume that recorded lien cancellation documents are correct. The court's ruling in this case serves as little more than a warning to title examiners that purportedly-cancelled tax liens are not to be trifled with.

For the foregoing reasons, the court finds that the tax liens involved in this action

---

**6.** The filings of both liens meet the requirements of 26 U.S.C. § 6323(f). Both liens were thereby made valid against subsequent purchasers. 26 U.S.C. § 6323(a).

**7.** 26 U.S.C. § 6331 provides in pertinent part as follows:

> If any person liable to pay any tax neglects or refuses to pay the same within 10 days after notice and demand, it shall be lawful for the Secretary or his delegate to collect such tax . . . by levy upon all property . . . belonging to such person *or on which there is a lien provided in this chapter for the payment of such tax.* (Emphasis added.)

**8.** It may be further observed from the negative character of the law of recordation, that recordation does not purport to be and is not itself the source of rights. A recorded purchase from the legal owner transfers ownership to the purchaser, not because of the recordation, but because of the purchase. While the unrecorded purchase from the owner does not transfer ownership insofar as third persons are concerned, a recorded purchase from one not the owner does not transfer ownership at all.
Redmann, *supra,* at 495.

were not discharged by the sheriff's sale or the clerk's cancellation, and that the IRS properly levied upon and seized the property. The United States shall submit an appropriate judgment within five (5) days of this date, entitling it to the funds held in the Registry of the Court and to costs.