**REPUBLIC BANK, Shreveport, Bank**

**v.**

**UNITED STATES of America, et al.**

**Civ. A. No. 80–1011.**

United States District Court,
W. D. Louisiana,
Shreveport Division.

June 30, 1981.

David M. Touchstone, Touchstone & Wilson, Ltd., Shreveport, La., for plaintiff.

J. Ransdell Keene, U.S. Atty., Dept. of Justice, Shreveport, La., Jean E. Kilpatrick, Atty. Tax Div., Dept. of Justice, Washington, D. C., for defendants.

## MEMORANDUM RULING

STAGG, District Judge.

On September 2, 1980, defendants filed a motion to dismiss, asserting that plaintiff had failed to state a claim upon which relief could be granted. A review of plaintiff's complaint, filed June 26, 1980, reveals that plaintiff held a mortgage on certain immovable property owned by Mr. George Upton in Caddo Parish, Louisiana. Mr. Upton eventually defaulted on the debt secured by the mortgage, and the Bank foreclosed; the

Sheriff's Sale took place February 13, 1980. For purposes of the Sheriff's Sale, the property was appraised at $16,000, and plaintiff bid the highest price of $4,000. At the time of the Sheriff's Sale, there were five tax liens against the property, in favor of the Internal Revenue Service, the last of which was recorded on September 28, 1979. The complaint also states that prior to the Sheriff's Sale plaintiff was aware of these tax liens and, in fact, informed the Internal Revenue Service of the impending sale. On February 27, 1980, the IRS informed plaintiff of its intention to redeem the property by paying an amount equal to the price paid by plaintiff at the Sheriff's Sale plus interest and expenses. At the time of the Sale, Mr. Upton still owed plaintiff $15,249.26 on the debt secured by that mortgage. Considering that these statements are true, as the court must for purposes of a motion to dismiss, an evaluation of the claims made by plaintiff in the complaint can be made. The claims are:

(1) Redemption of the property by the IRS carries with it an assumption by the IRS of Mr. Upton's original obligation to the Bank;

(2) That the IRS employees involved in the redemption effort conspired to seize plaintiff's property without statutory or constitutional authority for such redemption; and

(3) 26 U.S.C. § 7425(d) is unconstitutional. Plaintiff cites 42 U.S.C. § 1983, § 1985, 26 U.S.C. § 7426, and the Fourth and Fifth Amendments to the United States Constitution as providing the basis for this court's jurisdiction.

■ As this court has already found, executory process in Louisiana "is clearly not a *plenary* judicial proceeding and must be governed by § 7425(d)." *Myers v. United States*, 483 F.Supp. 1154, 1159 (W.D.La. 1980), *affirmed* 647 F.2d 591 (5th Cir. 1981). In its affirmance of the *Myers* case, the Fifth Circuit noted that:

For reasons to be set forth, the district court correctly held that Louisiana's executory process does not constitute a "judicial proceeding" within the meaning of

§ 7425(a), and that the foreclosure sale at issue here is thus an "other sale" governed by the provisions of § 7425(b). *Myers v. United States*, 647 F.2d 598 (5th Cir. 1981). Section 7425(d) provides, in pertinent part:

(1) Right to redeem.—In the case of a sale of real property to which subsection (b) applies to satisfy a lien prior to that of the United States, the Secretary or his delegate may redeem such property within the period of 120 days from the date of such sale or the period allowable for redemption under local law, whichever is longer.

(2) Amount to be paid.—In any case in which the United States redeems real property pursuant to paragraph (1), the amount to be paid for such property shall be the amount prescribed by subsection (d) of section 2410 of title 28 of the United States Code.

There can be no doubt that "Section 7425(b) *allows* redemption...." 483 F.Supp. at 1160. 28 U.S.C. § 2410(d) provides:

In any case in which the United States redeems real property under this section or section 7425 of the Internal Revenue Code of 1954, the amount to be paid for such property shall be the sum of—

(1) the actual amount paid by the purchaser at such sale (which, in the case of a purchaser who is the holder of the lien being foreclosed, shall include the amount of the obligation secured by such lien to the extent satisfied by reason of such sale),

(2) interest on the amount paid (as determined under paragraph (1)) at 6 percent per annum from the date of such sale, and

(3) the amount (if any) equal to the excess of (A) the expenses necessarily incurred in connection with such property, over (B) the income from such property plus (to the extent such property is used by the purchaser) a reasonable rental value of such property.

The language contained in § 2410(d)(1) stating that the redemption price "shall include

the amount of the obligation secured by such lien to the extent satisfied by reason of such sale" indicates that the redemption amount will vary with the appropriate state law. Such is the interpretation of the agency itself when in the regulations promulgated for redemption the following example is given:

> *Example (1).* A, a delinquent taxpayer, owns Blackacre located in X State upon which B holds a mortgage. After the mortgage is properly recorded, a notice of tax lien is filed which is applicable to Blackacre. Subsequently, A defaults on the mortgage and B forecloses on the mortgage which has an outstanding obligation in the amount of $100,000. At the foreclosure sale, B bids $50,000 and obtains title to Blackacre as a result of the sale. At the time of the foreclosure sale, Blackacre has a fair market value of $75,000. . . .

> \*   \*   \*   \*   \*   \*

> *Example (3).* Assume the same facts as in example (1), except that under the laws of X State, the amount bid is the amount of the obligation legally satisfied as a result of the foreclosure sale, and in the case in which the amount of the obligation exceeds the amount bid, the mortgagee has the right to a judgment for the deficiency computed as the difference between the amount of the obligation and the amount bid. In such a case, the district director must under subparagraph (1)(i) of this paragraph, pay $50,000 in order to redeem Blackacre, *whether or not B seeks a judgment for the deficiency.*

26 C.F.R. § 405-1 at 325–26 (Emphasis supplied). This interpretation by the agency is not only consistent with the language of the authorizing statute, but with the intent of Congress in passing that statute.

The bill also provides a formula for determining the price the Government must pay where it redeems property sold in proceedings where the Government is joined as a party (under this section), and where it is sold in foreclosures other than plenary judicial proceedings. The re-demption price is to be the amount paid by the purchaser at the foreclosure sale plus interest at the statutory rate (6 percent) from the date of sale. Where the purchaser at the sale is the person whose lien is being foreclosed, the amount paid by him includes the amount of the debt underlying his lien to the extent that the lien is satisfied by the sale. Where the lien is fully satisfied, the purchaser is not to receive less than the amount due him at the time of sale. Where the lien attaches to other property, however, or where, after the sale, the purchaser still has the right to sue for the unpaid balance of the amount due him, the amount paid does not include this unpaid balance.

S.Rep.No.1708, 89th Cong., 2nd Sess. (1966), 1966 U.S.Code Cong. & News, pp. 3722, 3756 (Emphasis supplied).

▇▇▇▇ These authorities make it clear that § 7425(d) grants the Internal Revenue Service the right of redemption if the property is sold at a foreclosure other than a plenary judicial proceeding, such as the Louisiana executory process, and the amount owed by the IRS is the amount of the purchaser's bid with interest and expenses if redeemed within 120 days. Plaintiff's petition, standing alone, states facts which clearly show that the IRS and its agents have properly made an offer of redemption within the statutory authority of 26 U.S.C. § 7425(b) and 28 U.S.C. § 2410(b). Therefore, plaintiff has demonstrated in its own petition that the IRS agents acted with statutory authority, offered the correct amount, and that the IRS has not assumed the balance of the obligation owed by Mr. Upton.

Having found that the IRS and its agents clearly acted with proper statutory authority, the court must now examine plaintiff's claim that the statutory authority granted violates the Constitution of the United States. Plaintiff attacks the statutory procedure as unconstitutional on two grounds. First, § 7425(b) violates the Fourth Amendment because a seizure is made without resort to judicial authority; and, second, that § 7425(b) is an illegal taking of property in violation of the Fifth Amendment.

■ The court notes, initially, that the only action taken by the government so far is a notification sent to plaintiff that the IRS intends to exercise its right of redemption. No search or seizure has taken place. Certainly any seizure that may be affected in the future as the result of § 7425(d) does not fall within the kind of seizures contemplated by the Fourth Amendment. In fact, whether any "seizure" takes place is, in fact, a subject of this judicial proceeding. The court is faced with a claim to property by the IRS which is, in fact, governed by the Fifth Amendment's due process constraints, not the Fourth Amendment. Further comment on plaintiff's Fourth Amendment claim is unnecessary.

■ Plaintiff's final basis for attacking the actions of the Internal Revenue Service rests on the argument that the procedure authorized by § 7425(d) constitutes an illegal taking of property. Specifically, the only possible attack in this area is that the procedure constitutes a taking without just compensation, which plaintiff itself recognizes in its response brief to the government's motion to dismiss. The basis of this claim—and indeed this court believes it to be the basis of the entire lawsuit—is that plaintiff stands to lose $12,000 because Mr. Upton's original debt still stood at $16,000 while the bid price by plaintiff was only $4,000. By only offering the bid price of $4,000, plaintiff argues, the IRS is taking the balance of nearly $12,000 from plaintiff without compensation. Standing by itself, this presents a facially attractive argument that the Fifth Amendment has been violated. However, such a charge must be considered in the overall statutory framework within which this procedure operates. The key to the problem is the availability to the plaintiff of a deficiency judgment under Louisiana law against Mr. Upton. Plaintiff does not challenge the availability of the deficiency judgment but argues, in its response to the government's motion to dismiss, that Mr. Upton is a nonresident absentee taxpayer and that procuring a deficiency judgment against him would be of no value. Essentially, this entire lawsuit boils down to a single question: does the fact that plaintiff's only possible relief may be against a judgment-proof debtor constitute a taking without just compensation?

Nor do we see any denial of substantive due process. Of course § 2410(d)(1) modifies state law, in cases in which the United States has an interest, as to what a lienor acquires when he purchases real property at his own foreclosure by giving the United States the right to redeem when its junior tax lien has been extinguished. In Virginia, the foreclosing-purchasing lienor is charged with knowledge that under the federal statute he risks being left with the right to become a judgment creditor of the debtor as his sole recourse on the secured obligation unless he bids the price at foreclosure up to the amount of the secured obligation. But since this option is available to avoid what may seem to the foreclosing lienor to be an unacceptable result, we cannot see where he has been deprived of property without due process of law.

*Equity Mortgage Corp. v. Loftus*, 504 F.2d 1071, 1079 (4th Cir. 1974). This court is in complete agreement with the reasoning of the *Loftus* court. At the time of the Sheriff's Sale, plaintiff had the option to bid the amount of the debt and avoid its current difficulty. It chose not to do so. Such a choice certainly cannot form the basis of a later attack on due process grounds. Of course, without a violation of a right protected by the Constitution, 42 U.S.C. §§ 1983, 1985 cannot provide plaintiff with a claim upon which relief can be granted. *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981).

For the foregoing reasons, this court can perceive no set of facts under which plaintiff would be entitled to relief. Accordingly, defendants' motion to dismiss is GRANTED.