**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**The FIRST NATIONAL BANK OF MEM-
PHIS, Defendant-Appellant.**

**No. 71–1699.**

United States Court of Appeals,
Sixth Circuit.

April 17, 1972.

Ernest Williams, III, Memphis, Tenn., on brief for defendant-appellant; Heiskell, Donelson, Adams, Williams & Wall, Memphis, Tenn., of counsel.

James H. Bozarth, Atty., Tax Div., Dept. of Justice, Washington, D. C., for plaintiff-appellee; Fred B. Ugast, Acting Asst. Atty. Gen., Meyer Rothwacks, Crombie J. D. Garrett, Attys., Tax Div., Dept. of Justice, Washington, D. C., on brief; Thomas F. Turley, Jr., U. S. Atty., William A. McTighe, Jr., Asst. U. S. Atty., Memphis, Tenn., of counsel.

Before PHILLIPS, Chief Judge, and McCREE and MILLER, Circuit Judges.

PHILLIPS, Chief Judge.

This is an appeal by the First National Bank of Memphis from a judgment enforcing a federal tax lien. We affirm.

The relevant facts are not in dispute. In 1962, Thomas W. Shipp borrowed $10,000 from the Bank, securing the loan by a pledge of certain insurance policies on his life. In February 1963, involuntary bankruptcy proceedings were instituted against Shipp. Under authority of an order of the Referee in Bankruptcy the bank cashed the policies, retaining $3,560.76 after satisfying Shipp's indebtedness to it. This sum represented the remaining proceeds from the cash surrender value of the insurance policies.

Notice of a federal tax lien against Shipp in excess of $200,000 was filed in the Register's Office of Shelby County, Tennessee, on October 23, 1963.

On December 9, 1963, Shipp executed the following document:

"First National Bank of Memphis
Memphis, Tennessee

"RE: Thomas W. Shipp loan
"Gentlemen:

"I am advised that you have on deposit to my credit, the approximate amount of $3,560.00, representing funds realized from the sale, disposition and transaction with certain policies of insurance which secured my loan from the First National Bank of Memphis.

"This will authorize you to pay such funds directly to E. J. Phelan for my account.

"This the 9th day of December, 1963.

"Yours very truly,
s/Thomas W. Shipp
THOMAS W. SHIPP"

The purpose of this transaction was to secure payment to Phelan and another attorney for legal services rendered and to be rendered in the bankruptcy proceedings and in a criminal prosecution brought against Shipp by the United States. The document was delivered to the Bank either on the day it is dated or on the following business day.

The Treasury Department served a levy on the Bank on April 6, 1964, to enforce the lien on Shipp's funds. The Bank had possession of these funds at the time the levy was served. The funds were not paid to Phelan until September 1964, following approval of the trustee's report holding that the remaining proceeds of the insurance policies were exempt from claims of the creditors of Shipp under Tennessee law. *See* T.C.A. § 56–1110; Lunsford v. Nashville Savings & Loan Corp., 162 Tenn. 179, 35 S.W.2d 395 (1931).

The United States filed this action to execute on the levy. The Bank defended on the ground that Phelan's interest in the fund was superior to the tax lien. District Judge Robert M. McRae, Jr. ruled that the tax lien had priority and entered judgment for the United States.

Because of the unique character of the statutory tax lien, a review of the legislative history is set forth as an Appendix to this opinion. Stated briefly, protection given to the United States has expanded from simple priority in the distribution of the assets of an insolvent person or estate owing import duties to a comprehensive lien on all property owned by a delinquent taxpayer. Following ratification of the Sixteenth Amendment, limitations on the scope of

the lien were enacted in the interest of furthering ordinary commercial transactions.

The United States acquires a lien on all property and property rights of any person having an outstanding tax liability. § 6321, Int.Rev.Code of 1954.[1] This lien arises at the time the tax assessment is made and continues until the tax is paid or becomes uncollectible by reason of lapse of time. § 6322. With certain exceptions, this lien takes priority over all subsequently perfected liens.

■ This appeal involves the applicability of two such exceptions, in the class known as superpriorities. The Bank claims superpriority status under § 6323(b) (1) (A), (b) (8).[2]

### 1) Security Superpriority

■ The statutory definitions of "security" and "purchaser" provided in § 6323(h) are set forth in the margin.[3] We hold that the Bank has failed to establish that Phelan was the "purchaser of [a] security," within the statutory definitions.

A distinction must be drawn between the funds held by the Bank and Phelan's interest in those funds. The Bank argues that following the cashing of the insurance policies, it held money belonging to Shipp and that the December 9 document divested Shipp of any interest in the funds. The net result, it is urged, is that after delivery of this document to the Bank, it held the money

---

1. "§ 6321. *Lien for taxes*

"If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."

All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.

2. "§ 6323. *Validity and priority against certain persons*

\*   \*   \*   \*   \*

"(b) *Protection for certain interests even though notice filed.*—Even though notice of a lien imposed by section 6321 has been filed, such lien shall not be valid—

"(1) *Securities.*—With respect to a security (as defined in subsection (h) (4))—

"(A) as against a purchaser of such security who at the time of purchase did not have actual notice or knowledge of the existence of such lien;

\*   \*   \*   \*   \*

"(8) *Attorneys' liens.*—With respect to a judgment or other amount in settlement of a claim or of a cause of action, as against an attorney who, under local law, holds a lien upon or a contract enforcible against such judgment or amount, to the extent of his reasonable compensation for obtaining such judgment or procuring such settlement, except that this paragraph shall not apply

to any judgment or amount in settlement of a claim or of a cause of action against the United States to the extent that the United States offsets such judgment or amount against any liability of the taxpayer to the United States."

The Bank is not required to elect a single superpriority to which it asserts entitlement. "[Superpriority] protection is to be granted if any category applies, even though another may also be relevant." H. R.Rep. No. 1884, 89th Cong., 2d Sess. 4 (1966) ; S.Rep. No. 1708, 89th Cong., 2d Sess. 4 (1966).

3. "(h) *Definitions.*—For purposes of this section and section 6324—

\*   \*   \*   \*   \*

"(4) *Security.*—The term 'security' means any bond, debenture, note, or certificate or other evidence of indebtedness, issued by a corporation or a government or political subdivision thereof, with interest coupons or in registered form, share of stock, voting trust certificate, or any certificate of interest or participation in, certificate of deposit or receipt for, temporary or interim certificate for, or warrant or right to subscribe to or purchase, any of the foregoing; negotiable instrument; or money.

\*   \*   \*   \*   \*

"(6) *Purchaser.*—The term 'purchaser' means a person who, for adequate and full consideration in money or money's worth, acquires an interest (other than a lien or security interest) in property which is valid under local law against subsequent purchasers without actual notice."

for Phelan, the document being evidence of Phelan's property interest in the funds. Although this argument has some appeal, the unambiguous statutory language mandates its rejection.

█ For purposes of this appeal, we assume that the December 9 document was an assignment to Phelan by Shipp of the funds held by the Bank.[4] Treating the instrument as an assignment, it is nothing more than a non-negotiable instrument evidencing money held by a third party for the holder of the instrument. Congress carefully has limited the definition of a security to negotiable instruments or money. We decline to ignore this limitation by ruling that the document in question was a "security" entitled to superpriority status. To define "money" as "money or any evidence of a right to receive money" would open the door "beyond any reasonable width that Congress could have had in mind." *See* Worley v. United States, 340 F.2d 500, 502 (9th Cir. 1965).

Even if it be assumed that the document was a "security," we note that it did not order the Bank to pay Phelan or explicitly assign the funds to Phelan; it merely "authorized" the Bank to pay Phelan. Further, it does not appear that the document was ever in Phelan's possession or that its existence was known to Phelan prior to the levy. At best the evidence shows that Shipp promised to pay Phelan out of the insurance proceeds and took it upon himself to make arrangements with the Bank. It thus is clear that Phelan could not be the "purchaser" of the money held by the Bank since he did not have "an interest (other than a lien or security interest) in [the money] which is valid under local law against subsequent purchasers without actual notice," as required by § 6323(h) (6).

2) Attorney's Lien Superpriority

█ The Bank asserts that Phelan obtained an attorney's lien on the policy proceeds through his efforts in obtaining an exemption for them under state law. We hold that the Bank has failed to establish superpriority on this theory.

The Bank argues that the policy proceeds were held by the trustee for the benefit of Shipp's creditors so that in securing their exemption, Phelan enhanced the value of Shipp's property, thereby giving Phelan an attorney's lien in the proceeds. The United States argues that Phelan merely defended Shipp's property and did not enhance it. Unfortunately the Bankruptcy Act is of little help in resolving this question. Section 70a of the Act, 11 U.S.C. § 110(a), provides that title to the bankrupt's property vests in the trustee "by operation of law . . . as of the date of filing of the petition." This language would appear to support the Bank's position. However, this automatic vesting does not apply "to property which is held to be exempt." This exception supports the Government's position. While the trustee does not take title to exempt property, he has "possession and right to possession of . . . exempted property until such be set aside as exempt." Vought v. Kanne, 10 F.2d 747, 748 (8th Cir. 1926), app. dismissed, 275 U.S. 574, 48 S.Ct. 16, 72 L. Ed. 433 (1927); *see* 4A Collier, Bankruptcy, ¶ 70.08 (14th ed.). Arguably, removal of the possessory interest of the trustee enhanced the value of Shipp's property. We need not reach this issue, however.

The funds were withdrawn to satisfy attorneys' fees due Phelan and another attorney for legal services rendered in both the bankruptcy proceedings and a criminal prosecution. The § 6323(b) (8) superpriority is limited by its terms

---

4. This assumption gives the Bank the benefit of a considerable doubt. The document simply "authorized" the Bank to pay Phelan. It did not divest Shipp of his ownership of the funds and did not preclude him from directing that they be paid to some other person.

to an attorney's "lien upon [a] judgment . . . to the extent of his reasonable compensation for obtaining such judgment . . . ." Manifestly, there can be no lien on a judgment in a criminal case. Further, apart from the exemption obtained for the insurance proceeds, there is nothing resulting from the bankruptcy proceedings which arguably can be called a judgment capable of supporting a lien. No proof was offered as to what part of the funds represented a reasonable compensation for securing the exemption as contrasted with that part of the funds representing compensation for the criminal case and the other aspects of the bankruptcy action. In the absence of such proof, the Bank has failed to show that it is entitled to attorney's lien superpriority.

Affirmed.

## APPENDIX

## HISTORY OF THE FEDERAL TAX LIEN

### Expansion of Government Protection

From almost the inception of Government under the Constitution, Congress expressed solicitude for the protection of federal revenue. With respect to bonds securing import duties:

"in all cases of insolvency, or where any estate in the hands of executors or administrators shall be insufficient to pay all the debts due from the deceased, the debt due to the United States on any such bonds shall be first satisfied." Act of July 31, 1789, ch. 5, § 21, 1 Stat. 29, 42.

This protection promptly was extended to

"cases in which a debtor, not having sufficient property to pay all his or her debts, shall have made a voluntary assignment thereof, for the benefit of his or her creditors, or in which the estate and effects of an absconding, concealed or absent debtor shall have been attached by process of law, as to cases, in which an act of legal bankruptcy shall have been committed."

Act of May 2, 1792, ch. 27, § 18, 1 Stat. 259, 263.

The limitation of this statute to import bonds was removed and it was made applicable to any "person hereafter becoming indebted to the United States, by bond or otherwise." Act of March 3, 1797, ch. 20, § 5, 1 Stat. 512, 515. This priority has been carried without substantive change through present law and is now codified as 31 U.S.C. § 191.

This statutory scheme merely gave the Government priority with respect to an insolvent debtor. No lien in favor of the Government attached until suit was brought against an insolvent debtor. *See* Prince v. Bartlett, 12 U.S. (8 Cranch) 431, 3 L.Ed. 614 (1814).

In 1864 the office of Commissioner of Internal Revenue was established in the Treasury Department to collect all "internal duties, stamp duties, licenses, or taxes." Act of June 30, 1864, ch. 173, § 1, 13 Stat. 223. Distraint proceedings were authorized against persons failing to pay a tax when due and notice given. *Id.* § 28, 13 Stat. 232–33. Auction sale of realty could be made if sale of the distrained personalty did not satisfy the tax liability. *Id.* § 30, 13 Stat. 234.

The forerunner of the present statute was enacted in 1866, providing:

"if any person . . . liable to pay any tax, shall neglect or refuse to pay the same after demand, the amount shall be a lien in favor of the United States from the time it was due . . . upon all property and rights to property belonging to such person."

Act of July 13, 1866, ch. 184, § 9, 14 Stat. 98, 107, *codified,* R.S. § 3186.

R.S. § 3186 was amended to provide that sessment-list was received by the collecthe lien ran "from the time when the astor." Act of March 1, 1879, ch. 125, § 3, 20 Stat. 327, 331.

The lien of R.S. § 3186 defeated even a bona-fide purchaser of realty without notice or knowledge of an unfiled tax lien. See United States v. Snyder, 149 U.S. 210, 13 S.Ct. 846, 37 L.Ed. 705 (1893).

Protection of Commercial Transactions

Within one month of the ratification of the Sixteenth Amendment, an amendment to R.S. § 3186 provided that the tax lien "shall not be valid as against any mortgagee, purchaser, or judgment creditor until notice of such lien shall be filed by the collector [in the designated place for filing]." Act of March 4, 1913, ch. 166, 37 Stat. 1016. This marked the beginning of a retreat from the pre-amendment harsh rule in order to protect specified interests from the operation of the lien. These provisions were substantively incorporated into the Internal Revenue Code of 1939, §§ 3670–72, which provided:

"§ *3670. Property subject to lien.*

"If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, penalty, additional amount, or addition to such tax, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."

"§ *3671. Period of lien.*

"Unless another date is specifically fixed by law, the lien shall arise at the time the assessment list was received by the collector and shall continue until the liability for such amount is satisfied or becomes unenforceable by reason of lapse of time.

"§ *3672. Validity against mortgagees, purchasers, and judgment creditors.*

"Such lien shall not be valid as against any mortgagee, purchaser, or judgment creditor until notice thereof has been filed by the collector—

(a) *Under State or Territorial laws.*—In accordance with the law of the State or Territory in which the property subject to the lien is situated, whenever the State or Territory has by law provided for the filing of such notice; or

"(b) *With Clerk of District Court.*— In the office of the clerk of the United States district court for the judicial district in which the property subject to the lien is situated, whenever the State or Territory has not by law provided for the filing of such notice; or

"(c) *With Clerk of District Court of the United States for the District of Columbia.*—In the office of the clerk of the District Court of the United States for the District of Columbia, if the property subject to the lien is situated in the District of Columbia."

In response to United States v. Rosenfield, 26 F.Supp. 433 (E.D.Mich.1938), Congress corrected the inequity of the notice by filing provision of the Code with respect to negotiable securities. It recognized the impossibility of checking the recorder's office of the residence of every prior holder of a security to determine whether a tax lien had been filed against the holder. To eliminate this heavy burden on ordinary commercial transactions and protect property interests in freely negotiable documents, § 3672 of the 1939 Code was amended to provide:

"§ *3672. Validity against mortgagees, pledgees, purchasers, and judgment creditors.*

"(*a*) *Invalidity of lien without notice.* Such lien shall not be valid as against any mortgagee, pledgee, purchaser, or judgment creditor until notice thereof has been filed by the collector—

"(*1*) *Under State or Territorial laws.* In the office in which the filing of such notice is authorized by the law of the State or Territory in which the property subject to the lien is situated, whenever the State or Territory has by law authorized the filing of such notice in an office within the State or Territory; or

"(*2*) *With clerk of district court.* In the office of the clerk of the United States district court for the judi-

cial district in which the property subject to the lien is situated, whenever the State or Territory has not by law authorized the filing of such notice in an office within the State or Territory; or

"*(3) With clerk of District Court of the United States for the District of Columbia.* In the office of the clerk of the District Court of the United States for the District of Columbia, if the property subject to the lien is situated in the District of Columbia.

"*(b) (1) Exception in case of securities.* Even though notice of a lien provided in section 3670 has been filed in the manner prescribed in subsection (a) of this section, or notice of a lien provided in section 3186 of the Revised Statutes, as amended, has been filed in the manner prescribed in such section or subsection (a) of this section, the lien shall not be valid with respect to a security, as defined in paragraph (2) of this subsection, as against any mortgagee, pledgee, or purchaser, of such security, for an adequate and full consideration in money or money's worth, if at the time of such mortgage, pledge, or purchase such mortgagee, pledgee, or purchaser is without notice or knowledge of the existence of such lien.

"*(2) Definition of security.* As used in this subsection the term 'security' means any bond, debenture, note, or certificate, or other evidence of indebtedness, issued by any corporation (including one issued by a government or political subdivision thereof), with interest coupons or in registered form, share of stock, voting trust certificate, or any certificate of interest or participation in, certificate of deposit or receipt for, temporary or interim certificate for, or warrant or right to subscribe to or purchase, any of the foregoing; negotiable instrument; or money.

"*(3) Applicability of subsection.* Except where the lien has been en-forced by a proceeding, suit, or civil action which has become final before the date of enactment of the Revenue Act of 1939, this subsection shall apply regardless of the time when the mortgage, pledge, or purchase was made or the lien arose."

Revenue Act of 1939, ch. 247, § 401, 53 Stat. 822. *See* H.R.Rep.No. 855, 76th Cong., 1st Sess. (1939—2 Cum. Bull. 504, 524) (1939).

This amendment resulted in the reversal of *Rosenfield* sub nom. in Morrison v. United States, 26 Am.Fed.Tax.R. 1205 (6th Cir. 1939).

The provisions of the 1939 Code were carried over to Internal Revenue Code of 1954 without substantive change. *See* S.Rep.No. 1622, 83d Cong., 2d Sess. 575–76 (1954), U.S.Code Cong. & Admin. News 1954, p. 4629.

In 1964 the superpriority afforded securities was extended to motor vehicles. Revenue Act of 1964, Pub.L.No. 88–272, § 236, 78 Stat. 19, 127. Again, the motivation was the protection of ordinary commercial transactions where the purchaser could not reasonably be expected to check the recorder's office in each jurisdiction where a prior owner has resided. *See* S.Rep.No. 830, 88th Cong., 2d Sess. (1964–1 (Pt. 2) Cum.Bull. 505, 659–60) (1964).

### Present Law

Two years later the present tax lien statutory frame-work was enacted in the Federal Tax Lien Act of 1966, Pub.L. No. 89–719, 80 Stat. 1125. The Act was "the first comprehensive revision and modernization of the provisions of the internal revenue laws concerned with the relationship of Federal tax liens to the interests of other creditors." H.R.Rep. No. 1884, 89th Cong., 2d Sess. 1 (1966); S.Rep.No. 1708, 89th Cong., 2d Sess. 1 (1966). The superpriorities afforded securities and motor vehicles were unchanged. H.R.Rep.No. 1884, *supra* at 4, 36; S.Rep.No. 1708, *supra* at 4. Eight additional superpriorities were added—retail purchases, casual sales, possessory

liens, real estate taxes, small mechanic's liens, attorney's liens, certain insurance contracts and passbook loans. *See* §§ 6323(b) (3)–(b) (10). The Act further set forth definitions in § 6323(h).

The rationale for the attorney's lien superpriority was the enhancement of the taxpayer's property through the efforts of the attorney.

*"(f) Attorneys' liens.*—A sixth new category of superpriority added by the bill relates to attorneys' fees. Federal tax liens cover all of a taxpayer's property, including causes of action and any amounts which may be owed to him under judgments or settlements of suits or other proceedings. It is believed that attorneys whose efforts result in obtaining or collecting judgments or settlements should be protected as to their reasonable fees to the extent that the fees are protected under local law. The attorney's fee in such a case can be thought of as similar in concept to the repairman's charge in that it can be expected to enhance the value of the taxpayer's property. Moreover, as in the case of a possessory lien, the efforts of the attorney may account for the realization of value by the taxpayer from the judgment or settlement. However, under the bill, in a proceeding against the Government, the Government retains its right to set off against any recoveries from it any amounts due it by the taxpayer on account of any tax or any other debt or claim. This set-off means that the attorney's lien 'superpriority' does not apply with respect to judgments he obtains for the taxpayer against the Government." H.R.Rep.No. 1884, *supra* at 6.

*"Attorneys' liens.*—Paragraph (8) of section 6323(b) provides that even though a notice of tax lien has been filed, the lien shall not be valid with respect to a judgment or other amount in settlement of a claim or of a cause of action, as against an attorney who, under local law, holds a lien upon or a contract enforceable against such judgment or amount, to the extent of the attorney's reasonable compensation for obtaining the judgment or procuring the settlement. However, an attorney has no priority with respect to a judgment or amount in settlement of a claim or of a cause of action against the United States to the extent that the United States offsets such judgment or amount against any liability of the taxpayer to the United States.

"The tax lien is, therefore, not valid with respect to an attorney's claim against a judgment or fund resulting from the settlement of an administrative claim (such as a workmen's compensation claim) or a cause of action, to the extent the attorney, under local law, has a lien or an enforceable contract against such judgment or fund. The priority granted to attorneys' liens is, however, limited to reasonable compensation for obtaining the judgment or settlement. Generally, reasonable compensation means the amount customarily allowed under local law for an attorney's services for litigating or settling a similar case or administrative claim. Nevertheless, reasonable compensation shall be determined on the basis of the facts and circumstances of each individual case.

"In the case of claims or causes of action against the United States, the priority granted under paragraph (8) is not applicable to a judgment or other fund resulting from the successful litigation or settlement of an administrative claim or cause of action to the extent that the United States, under any legal or equitable right, off-sets its liability under the judgment or settlement against any liability of the taxpayer to the United States. For example, the priority granted under paragraph (8) would not be applicable in a case like United States v. Munsey Trust Co., 332 U.S. 234 [67 S.Ct. 1599, 91 L.Ed. 2022] (1947), which held that the United States may set off the amount due it for taxes against an amount owed by the United

States to the taxpayer under a contract. Similarly, the priority granted by paragraph (8) would not be applicable to any amount the Secretary of the Treasury or his delegate credits against any liability of the taxpayer in accordance with section 6402 of the code (relating to authority to make credits or refunds)." *Id.* at 38–39.

The definition of "security" was continued without substantive change. *Id.* at 49. The term "purchaser" had been used in the tax lien statutes since 1913. However, the term had not been defined by statute.

As set forth in the House Report:

"*Purchaser*—Present law does not define the term 'purchaser.' The courts have held that a purchaser, for purposes of existing section 6323, is a person who acquires title to property for a valuable consideration. See United States v. Scovil, 348 U.S. 218, 221 [75 S.Ct. 244, 99 L.Ed. 271] (1955). A valuable consideration, as interpreted by the courts, may not be a nominal amount, but it may be so small an amount as to have little relation to the value of the property acquired. See, for example, Enochs v. Smith, 359 F.2d 924 (5th Cir. 1966). Paragraph (6) of section 6323(h) changes present law by adding to the code a definition of the term 'purchaser'.

"Paragraph (6) provides that the term 'purchaser' means a person who, for adequate and full consideration in money or money's worth, acquires an interest (other than a lien or security interest) in property which is valid under local law against subsequent purchasers without actual notice. A purchaser must acquire his interest in property in a transaction having the indicia of a vendor-vendee relationship. Although paragraph (6), by requiring adequate and full consideration, changes the result reached in Enochs v. Smith, *supra*, it does not preclude a bona fide bargain purchaser from qualifying under this definition." *Id.* at 49–50.