TKB INTERNATIONAL, INC.,
Plaintiff–Appellee,

v.

UNITED STATES of America,
Defendant–Appellant.

TKB INTERNATIONAL, INC.,
Plaintiff–Appellant,

v.

UNITED STATES of America,
Defendant–Appellee.

Nos. 91–55685, 91–55814.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 4, 1992.

Decided June 3, 1993.

Gary R. Allen and Kenneth L. Greene, Deputy Attys. Gen., Tax Div., Washington, DC, for defendant-appellant-cross-appellee.

David A. Stall, Callahan & Gauntlett, Irvine, CA, for plaintiff-appellee-cross-appellant.

Before: WALLACE, Chief Judge, TROTT and T.G. NELSON, Circuit Judges.

TROTT, Circuit Judge:

This case presents the interesting question of whether a federal tax lien on real property, filed in the proper location but outside the property's direct chain of title, is valid under 26 U.S.C. § 6323(f)(4) as against a subsequent purchaser for value who took the property with actual knowledge of the tax lien. We affirm the district court and hold that under this particular statutory scheme, the tax liens in this case are not valid as against the subsequent purchaser who took the property with actual knowledge.

## I

The real property involved in this case is located at 760 W. 16th Street, Number N., in Costa Mesa, California (hereinafter "the Property"). On November 27, 1984, the Property was purchased by Creative Ways, Inc. ("Creative Ways"), a California corporation wholly-owned by two equal shareholders,

Clifford Hanson and Thomas Platfoot. At the time of purchase, a Promissory Note and Deed of Trust were executed in favor of Great Western Savings and Loan Association ("Great Western") in the amount of $264,000. The developer of the Property took back a second Deed of Trust for $32,500, which was subsequently assigned to Great Western. Title was taken in the name of Creative Ways.

In 1985, Hanson and Platfoot formed Videorated, Inc., in which each held a 50% interest. Videorated went through a public offering on March 1, 1986, after which Platfoot and Hanson were no longer sole owners, although they remained the majority shareholders. By deed dated March 27, 1986, and recorded July 30, 1986, Creative Ways transferred the Property to Videorated, allegedly to increase the latter's assets as part of the effort to take Videorated public. The recording of the deed was the only documentation of the transfer. No consideration passed between the two corporations, but the recorded deed reflected payment of a transfer tax consistent with the payment of a full fair-market purchase price for the Property.

Subsequently, by deed recorded May 28, 1987, Videorated transferred the Property to California Kuma, Inc., another corporation wholly-owned by Platfoot and Hanson in equal shares. Like Videorated before it, California Kuma paid nothing for the Property.

Meanwhile, between 1983 and 1986, Creative Ways incurred payroll tax liabilities totaling over $237,000. Notices of federal tax liens were filed in the County Recorder's Office for Orange County, California, wherein the Property was located, on October 2, 1986, October 30, 1986, February 23, 1987, April 23, 1987, July 6, 1987, and March 4, 1988.

In the early part of 1988, California Kuma entered into negotiations with TKB International, Inc. ("TKB"), for a private sale of the Property. The parties agreed upon a purchase price of $475,000 and opened an escrow. A title report prepared by Stewart Title Company and dated April 13, 1988, disclosed the existence of the tax liens as possible blemishes on the Property's title. TKB never consummated the sale.

Hanson died in the summer of 1987. Through the beginning of 1988, Platfoot continued to make payments on the first mortgage. However, when the balloon payment on the second Deed of Trust came due in March, 1988, Platfoot defaulted. On July 18, 1988, Great Western sued both California Kuma and Creative Ways jointly and as agents for each other to foreclose on the Deeds of Trust. California Reconveyance Company, the trustee on the Deeds of Trust, obtained a title opinion from Commerce Title Insurance Company ("Commerce") which reported California Kuma as the titleholder but failed to list the IRS tax liens on the Property filed subsequent to the conveyance of the Property from Creative Ways to Videorated. Prior to the foreclosure sale, TKB sought and received assurances from the trustee that the title to the Property would be transferred free and clear of the liens revealed in the Stewart Title Report. Apparently, the trustee believed the foreclosure sale would extinguish the IRS tax liens on the Property. At a nonjudicial foreclosure sale on December 2, 1988, California Reconveyance Co. sold the Property to TKB for $308,877.41. No notice of the sale was given to the United States as required under 26 U.S.C. § 7425(b). After the sale, the IRS seized the Property in satisfaction of the tax liens against Creative Ways.

TKB brought suit against the United States under 26 U.S.C. § 7426(a) (1988) alleging the Internal Revenue Service ("IRS") wrongfully levied against the Property now owned by TKB in satisfaction of a prior owner's preexisting tax liens. TKB sought to quiet title in the Property, enjoin the IRS from selling or disposing of the Property, have the IRS levy released, and receive attorneys' fees pursuant to 26 U.S.C. § 7430.

After a bench trial, the district court made several findings of fact: first, due to the fraudulent nature of the transfers of the Property from Creative Ways to Videorated, and then from Videorated to California Kuma, the Property was subject to the tax liens under § 6321 even though the tax liens were not filed until after the first fraudulent transfer to Videorated; second, the failure to

provide notice of the nonjudicial foreclosure sale to the IRS prevented the sale from disturbing those tax liens under 26 U.S.C. § 7425; third, TKB had actual knowledge of the existence of the tax liens from the Stewart Title Report prepared in anticipation of TKB's private purchase of the Property in April, 1988; fourth, TKB did not have actual knowledge that the transfers of the Property from Creative Ways to Videorated, and from Videorated to California Kuma, were not supported by adequate consideration; and finally, due to the apparent propriety of the Creative Ways–Videorated transfer, notices of the federal liens were filed outside the direct chain of title in the county title index:

> So a reasonable inspection of that title would disclose that there is a general lien against the taxpayer, but there is a perfected lien against the property owned by the taxpayer. And the record would show that it is not owned by the taxpayer at the time it is perfected. So the effect is, when the buyer looks at the title, the buyer sees a general lien against the taxpayer, and information that a perfected lien against the property does not exist.

> One could only conclude, as a reasonable title reader at that point from the information that is contained in the index, that a tax lien did not attach to the property. The buyer would be affirmatively told that there is not a tax lien.

Finding that the tax liens were not filed until after the Property's apparent valid transfer from Creative Ways to Videorated, the district court held TKB took the Property free and clear of tax liens, because the liens were not valid as against TKB under § 6323(f)(4), the indexing requirement for the filing of federal tax liens.

The United States timely appealed this Order on May 30, 1991. Fed.R.App.P. 4(a)(1). The district court then issued an Order denying TKB's motion for an award of attorneys' fees and expenses under 26 U.S.C. § 7430, from which TKB timely cross-appealed on June 13, 1991. We have jurisdiction under 28 U.S.C. § 1291 (1988), and we affirm the district court on both issues.

## II

In this appeal, the United States ("the government") contends a subsequent purchaser of real property who has actual knowledge of tax liens that appear outside the property's direct chain of title may not rely on § 6323(f)(4) to take the property free and clear of the liens. The proper application of § 6323(f)(4) is a question of law which we review de novo. *United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir.) (en banc), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

Even though the government's argument has some appeal, we must keep in mind that "[a] federal tax lien is wholly a creature of federal statute." *Kivel v. United States*, 878 F.2d 301, 303 (9th Cir.1989). A federal tax lien is created upon the taxpayer's property when the taxpayer who is liable for the tax "neglects or refuses to pay the same after demand." 26 U.S.C. § 6321. The creation of a tax lien does not require a filing of public notice, and, once created, the tax lien is effective as against the taxpayer until "the liability for the amount so assessed (or a judgment against the taxpayer arising out of such liability) is satisfied or becomes unenforceable by reason of lapse of time." 26 U.S.C. § 6322.

Whether the taxpayer is liable for the taxes in this case is not in dispute. Instead, the question here involves the validity of federal tax liens as against a subsequent purchaser of the taxpayer's property. Generally, "[p]roperty subject to a Federal tax lien which has been sold or otherwise transferred by the taxpayer may be seized while in the hands of the transferee or any subsequent transferee." 26 C.F.R. § 301.6331–1(a)(1) (1991). When first created by Congress in 1866, a tax lien on a delinquent taxpayer's property "defeated even a bona-fide purchaser of realty without notice or knowledge of an unfiled tax lien." *United States v. First Nat'l Bank of Memphis*, 458 F.2d 560, 564 (6th Cir.1972) (citing *United States v. Snyder*, 149 U.S. 210, 13 S.Ct. 846, 37 L.Ed. 705 (1893)). The rule holding "secret" tax liens were good as against a purchaser for value without notice continued to be enforced through the beginning of the twentieth cen-

tury, a period of history in which tax liens were few. *United States v. Gilbert Assocs., Inc.*, 345 U.S. 361, 363–64, 73 S.Ct. 701, 703, 97 L.Ed. 1071 (1953).

However, shortly after the ratification of the Sixteenth Amendment in 1913, Congress began a "retreat from the pre-amendment harsh rule in order to protect specified interests from the operation of the lien." *First Nat'l Bank of Memphis*, 458 F.2d at 565. Congress amended the tax lien statutes so that a "tax lien 'shall not be valid as against any mortgagee, purchaser, or judgment creditor until notice of such lien shall be filed by the collector [in the designated place for filing].'" *Id.* (quoting Act of March 4, 1913, ch. 166, 37 Stat. 1016).

"Subsequently, the Federal tax lien statutes were amended by Section 3672 of the Internal Revenue Code [in 1939] to protect mortgagees, pledgees, purchasers and judgment creditors where proper notice of the lien was not given as provided by the statutes." *Filipowicz v. Rothensies*, 43 F.Supp. 619, 623 (E.D.Pa.1942). The prime purpose of this section, now 26 U.S.C. § 6323, was "to mitigate the rigors of Sec. [6321] by protecting from secret liens the persons described in Subd. (a) of that section...." *Richter's Loan Co. v. United States*, 235 F.2d 753, 754–55 (5th Cir.1956). The rule remains, however, "[u]nless a federal statute requires a government tax lien to be recorded, the unrecorded lien may be enforced against subsequent transferees." *United States v. Vohland*, 675 F.2d 1071, 1074 (9th Cir.1982).

A crucial question, then, is whether there is any statutory requirement that general tax liens be filed. *Id.* Here, that crucial question is easily answered. "The validity and priority of a § 6321 lien as against certain third parties with subsequently arising interests in the property or interests in property to which the lien has attached are governed by 26 U.S.C. § 6323...." *United States v. Rodgers*, 461 U.S. 677, 682 n. 2, 103 S.Ct. 2132, 2136 n. 2, 76 L.Ed.2d 236 (1983). Section 6323(a) provides:

The lien imposed by section 6321 *shall not be valid as against any purchaser,* holder of a security interest, mechanic's lienor, or judgment lien creditor *until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary.*

(emphasis added). As against subsequent purchasers, then, "we must deem the United States' lien to have commenced no sooner than the filing of notice." *United States v. McDermott,* —— U.S. ——, ——, 113 S.Ct. 1526, 1528, 123 L.Ed.2d 128 (1993) (holding a federal tax lien filed before a delinquent taxpayer acquires real property has priority over a private creditor's previously filed judgment lien).

■ The requirements for filing proper notice of a federal tax lien are set forth in § 6323(f) and are a matter of federal law. *United States v. Union Central Life Ins. Co.*, 368 U.S. 291, 293–96, 82 S.Ct. 349, 351–52, 7 L.Ed.2d 294 (1961).[1] Section 6323(f)(4) provides the manner in which the notice must be filed:

In the case of real property, if—

(A) under the laws of the State in which the real property is located, a deed is not valid as against a purchaser of the property who (at the time of purchase) does not have actual notice or knowledge of the existence of such deed unless the fact of filing of such deed has been entered and recorded in a public index at the place of filing in such a manner that a reasonable inspection of the index will reveal the existence of the deed, and (B) there is maintained (at the applicable office under paragraph (1)) an adequate system for the public indexing of Federal tax liens,

then the notice of lien referred to in subsection (a) shall not be treated as meeting the filing requirements under paragraph (1) unless the fact of filing is entered and recorded in the index referred to in subparagraph (B) in such a manner that a

---

1. Section 6323(f)(1)–(3) prescribes the proper form to be used for filing, and the proper location at which the notice of lien must be filed. In this case, however, there is no question but that the IRS used the proper forms and filed the notice of the liens in the proper location.

reasonable inspection of the index will reveal the existence of the lien.

Specifically, § 6323(f)(4)

> governs the validity of liens in a state, such as California, whose laws hold that a deed is valid against a purchaser of property only if the deed has been entered and recorded in the public index in such a manner that a reasonable inspection of the index will reveal the existence of the deed and whose recording system provides an adequate system for the public indexing of federal tax liens.

*Kivel,* 878 F.2d at 303–04.[2] If the IRS fills out the proper form and files it in the correct location, the lien is "valid notwithstanding any other provision of law regarding the form or content of a notice of lien." 26 U.S.C. § 6323(f)(3).

Under this statutory framework, whether TKB had actual notice of the federal tax liens is unimportant. Instead, the federal tax liens on the Property would be valid against TKB unless (1) TKB is a subsequent purchaser as defined in § 6323(h)(6), and (2) the notice of the lien was not filed "in such a manner that a reasonable inspection of the index will reveal the existence of the lien." § 6323(f)(4). Here, the government does not dispute the conclusion that TKB was a subsequent purchaser of the Property as defined in § 6323(h)(6). Our focus, therefore, is on the second prong of the test.

■ Upon reviewing the evidence, the district court concluded a reasonable inspection of the Property's chain of title would not reveal the existence of the federal tax liens. Whether the district court's conclusion is cor-

rect is a mixed question of fact and law which "[w]e review ... de novo and make our own determination of what is reasonable." *Kivel,* 878 F.2d at 304.

■ The parties agree that the federal tax liens were filed after the Property was transferred from Creative Ways to Videorated and the deed recorded. Therefore, even a reasonable and diligent search of the title index by the subsequent purchaser would not reveal the existence of the federal tax liens.

However, a subsequent purchaser has a duty to look beyond the index. We require "that as to documents that are in the actual chain of title the searcher must at least look at such documents as may have a current effect and must then act on the notice imparted." *Id.* In this case, such an extended search would not reveal the existence of the federal tax liens. The deed between Creative Ways and Videorated recorded July 30, 1986, reflected Videorated's apparent payment of full market value for the Property. The deed, then, would not put a purchaser on notice that the transfer actually was fraudulent and involved no consideration.[3]

■ In summary, TKB was a subsequent purchaser who, through a reasonable inspection of the index, would not become aware of the existence of the federal tax liens. Therefore, we must conclude the federal tax liens recorded after the Property had been transferred from the taxpayer, Creative Ways, to Videorated are not valid against the subsequent purchaser, TKB, even though TKB had actual knowledge of the liens at the time it purchased the property.

**2.** Section 6323 provides protection for a variety of transferees. Those persons protected under § 6323(b) are limited expressly to those who acquired their interest *without actual notice of the federal tax liens:*

> The basic priority rules for tax liens are established by 26 U.S.C. § 6323, which, in addition to subordinating the federal tax lien to certain perfected security interests, makes superior to the lien, interests of persons who, *without actual knowledge of the lien,* acquire interests in personal property purchased from retail dealers in the ordinary course of trade, personal property (less than $250) purchased in casual sales, securities, motor vehicles and real property by virtue of a lien for certain

local real property and special assessment taxes, or for mechanic's liens. §§ 6323(b)(1) to (7).

*Slodov v. United States,* 436 U.S. 238, 257 n. 20, 98 S.Ct. 1778, 1790 n. 20, 56 L.Ed.2d 251 (1978) (emphasis added).

**3.** As we pointed out above, the district court found no evidence showing TKB had actual knowledge of the fraudulent nature of the Property's transfers from Creative Ways to Videorated, and from Videorated to California Kuma. Had the evidence shown TKB had actual knowledge of the fraudulent nature of the transfers, we agree with the district court that the result in this case would be "very different."

Despite the foregoing analysis, the government argues, "It is readily apparent that Section 6323(f)(4) was intended to protect only those purchasers who did not have actual knowledge of the Government's lien." Although this argument is appealing, we reject it and note specifically that the protections afforded subsequent purchasers who acquired their interests prior to the IRS filing of a tax lien under § 6323(a) are not limited to purchasers who took without knowledge of the liens. In fact, in drafting this section, Congress rejected explicitly an attempt to so limit the protections of § 6323(a).[4]

In conclusion, through § 6323(a), Congress required the government to record its tax liens through a particular procedure in order to make those liens valid against subsequent purchasers of the taxpayer's property. In this case, the federal tax liens asserted against the Property were not filed properly under § 6323(f)(4) until after the Property had been transferred from the taxpayer, Creative Ways, to Videorated. Through a reasonable inspection of the title index, a subsequent purchaser of the Property like TKB would be unable to discover the fact that the government had filed federal tax liens against the Property. Therefore, we hold that, under 26 U.S.C. § 6323, the federal tax liens are not valid as against TKB, despite its actual knowledge of the existence of those tax liens.

### III

The government argues the plain language of 26 U.S.C. § 7425(b) requires the conclusion that the foreclosure sale at which TKB bought the Property was made subject to the federal tax liens. The proper application of § 7425(b) is a question of law reviewed de novo. *McConney*, 728 F.2d at 1201.

The statute in question provides:

[A] sale of property on which the United States has or claims a lien, ... pursuant to a nonjudicial sale under a statutory lien on such property—

(1) shall ... be made subject to and without disturbing such lien ... if notice of such lien was filed ... in the place provided by law for such filing or recording more than 30 days before such sale and the United States is not given notice of such sale in the manner prescribed....

26 U.S.C. § 7425(b). "As a general rule, a lien in favor of the United States is not disturbed by a nonjudicial sale of the property. I.R.C. § 7425(b). There is an exception, however, if the IRS is given notice of the sale in accordance with IRS regulations." *Whiteside v. United States*, 833 F.2d 820, 822 (9th Cir.1987) (footnote omitted). If proper notice is given, the federal tax lien is discharged, although the United States retains the right to redeem the property. 26 U.S.C. § 7425(d)(1).

The parties in the instant case agree that notice was not given to the United States prior to the foreclosure sale. Applying § 7425(b), then, the district court concluded

---

4. In the reorganization of the federal tax code in 1954, the House of Representatives proposed additional language which would limit § 6323 to subsequent purchasers who take without actual notice of the federal tax liens:

(c) Lien Valid Without Notice in Certain Cases. The lien imposed by section 6321 shall be valid, without the filing of notice thereof, as against any mortgagee, pledgee, purchaser, or judgment creditor, if—

(1) in the case of a mortgage, pledge, or purchase, such mortgagee, pledgee, or purchaser had notice or knowledge of the existence of such lien at the time the mortgage, pledge, or purchase was made....

H.R.Rep. No. 8300, 83d Cong., 2d Sess. 680 (1954); *see also* H.R.Rep. No. 1337, 83d Cong., 2d Sess. A407 (1954). However, the language was excluded ultimately by the Senate:

Subsection (c) of the House bill provided certain rules with respect to the validity of the tax lien, without the filing of notice thereof, as against mortgagees, pledgees, purchasers, or judgment creditors. The applicable rules have been developed under existing law by judicial construction, and [the] committee deems it advisable to continue to rely upon judicial interpretation of existing law instead of attempting to prescribe specific statutory rules. The deletion of subsection (c) will continue in effect the existing law.

S.Rep. No. 1622, 83d Cong., 2d Sess. 5224 (1954); *see also* H.R.Conf.Rep. No. 2543, 83d Cong., 2d Sess. 78 (1954) (House recedes from Senate's deletion of subsection (c)).

the validity of the liens as against TKB was neither strengthened nor weakened by the foreclosure sale:

> The failing to give the notice, in my view, doesn't, per se, add anything to the strength or the weakness of the lien. The giving of the notice is only a method by which to notify the IRS, have them come in, and be able to eliminate their lien if they don't come in.
>
> So, in effect, that section provides that if there is no notice given to the IRS, then the sale is made subject to the IRS claim, whatever it may be; weak, strong, valid or invalid. It doesn't disturb the lien, whatever it may be, but it doesn't add anything to the lien if it's no good to begin with.
>
> . . . .
>
> The effect of that is that a plaintiff buying in with no notice given can't rely on the conclusiveness of the sale as a method to wipe out the IRS, but now has to be ready to litigate with the IRS the validity of the IRS position. And that's what's occurring in this case.

We agree with the district court and reject the government's argument to the contrary. Through § 7425(b), "Congress intended only to shield the government's junior liens from extinction so the government could protect its interests at a later date." *First Am. Title Ins. Co. v. United States,* 848 F.2d 969, 972 (9th Cir.1988). Here, the district court properly concluded the government's interest in the Property was not extinguished by the foreclosure sale.

Even though the government's interest in the Property was shielded from extinction by § 7425(b), the validity of that interest as against subsequent purchasers is unaffected by § 7425(b). *See* S.Rep. No. 1708, 89th Cong., 2d Sess., *reprinted in* 1966 U.S.C.C.A.N. 3722, 3749 ("Where foreclosures covered by [§ 7425(b) ] are made without proper notice to the Government, the bill provides that this does not affect the Government's claim under a tax lien.... In these cases, the Government's claim continues against the property into the hands of a third party.").

Despite the government's contention, the Fifth Circuit's holding in *Myers v. United States,* 647 F.2d 591 (5th Cir.1981), is not to the contrary. In *Myers,* the government properly had recorded two federal tax liens on a taxpayer's property. Both federal tax liens were inferior to the senior encumbrance on the property, a mortgage held by a bank. The bank commenced foreclosure proceedings and a sheriff's sale was held. The government did not receive notice of the sale. At the sheriff's sale, the property was purchased by the bank for an amount less than the amount of the debt secured by the mortgage. After the purchase of the property by the bank, all inferior encumbrances including the federal tax liens were marked as cancelled in the public records in accordance with Louisiana state law.

Subsequently, Myers bought the property from the bank. Thereafter, the government seized the property in satisfaction of the federal tax liens. Myers brought an action for wrongful levy against the United States. The district court found for the government, and the Fifth Circuit affirmed. The court of appeals held that the federal tax liens were undisturbed by the foreclosure sale under § 7425(b), and that the government's "levy and seizure need not be accomplished while the property is in the hands of the taxpayer; so long as the property is subject to a valid federal tax lien, it may be seized in the hands of any subsequent purchaser." *Myers,* 647 F.2d at 601.

Here, the holding in *Myers* is not helpful for two reasons. First, unlike the situation in the instant case, the federal tax liens in *Myers* had been properly filed while the delinquent taxpayer was the record titleholder of the property. *See Myers v. United States,* 483 F.Supp. 1154, 1160 n. 6 (W.D.La. 1980) ("The filings of both liens meet the requirements of 26 U.S.C. § 6323(f). Both liens were thereby made valid against subsequent purchasers. 26 U.S.C. § 6323(a)."), *aff'd,* 647 F.2d 591 (5th Cir.1981). Second, although the court emphasized that "Myers was entitled to raise virtually any legitimate and available objection he might have had to the validity of the levy," *Myers,* 647 F.2d at 603, Myers failed to challenge, and the court

did not discuss, the validity of the tax liens on the grounds that a subsequent purchaser could not discover the liens through a reasonable inspection of the index.

Therefore, we conclude that under the plain language of § 7425(b), the tax liens in question survived the nonjudicial foreclosure sale of the Property to TKB. The fact that the federal tax liens survived the foreclosure sale, however, does not affect the validity of those liens as against the subsequent purchaser, TKB.

## IV

In its cross-appeal, TKB argues the district court erred in not awarding TKB attorneys' fees and expenses pursuant to 26 U.S.C. § 7430. TKB also seeks attorneys' fees under § 7430 in conjunction with this appeal.

Under § 7430, a prevailing party in a matter against the United States involving tax may be awarded "reasonable litigation costs" if it can establish "the position of the United States in the proceeding was not substantially justified...." 26 U.S.C. § 7430(c)(4)(A)(i). The district court did not find the government's position to be "not substantially justified," and denied TKB's motions for attorneys' fees. We review the district court's finding under an abuse of discretion standard. *Bertolino v. Commissioner*, 930 F.2d 759, 761 (9th Cir.1991) (citing *Pierce v. Underwood*, 487 U.S. 552, 559–63, 108 S.Ct. 2541, 2547–49, 101 L.Ed.2d 490 (1988)).

Under the abuse of discretion standard, we will reverse only if we have a definite and firm conviction that the district court committed a clear error of judgment in the conclusion it reached upon weighing the relevant factors. *Abatti v. Commissioner*, 859 F.2d 115, 117 (9th Cir.1988). "A position is substantially justified if it is justified in substance or in the main, that is, if it has a reasonable basis both in law and fact." *Norgaard v. Commissioner*, 939 F.2d 874, 881 (9th Cir.1991) (quotations omitted).

Here, TKB's arguments do not leave us with a definite and firm conviction that the district court erred in denying TKB its request for attorneys' fees. The government's arguments both at trial and on appeal are based on supportable interpretations of federal tax statutes and case law. When the case presents such a close question of law, we cannot say the district court abused its discretion in finding the government's position was substantially justified. Therefore, we affirm the district court's denial of TKB's motion for attorneys' fees pursuant to 26 U.S.C. § 7430.

Moreover, because whether a subsequent purchaser with actual knowledge of the existence of federal tax liens may benefit from the protections in 26 U.S.C. § 6323(a) is a question of first impression in this circuit, the government's attempt to appeal the district court's conclusions was substantially justified. *Stebco Inc. v. United States*, 939 F.2d 686, 688 (9th Cir.1991). TKB's request for attorneys' fees on appeal is denied.

## V

We affirm the district court and hold that TKB may take the Property free and clear of the federal tax liens under 26 U.S.C. § 6323(a), even though TKB had actual knowledge of the existence of the liens. Further, we agree that § 7425 does not affect the validity of the federal tax liens as against a subsequent purchaser, TKB. Finally, we affirm the district court's denial of TKB's motion for attorneys' fees under § 7430, and deny its request for attorneys' fees on appeal.

**AFFIRMED.**