# United States Tax Court

T.C. Memo. 2023-70

HARUKI YAMADA,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

YASUKO OGAWA,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket Nos. 2718-14, 3020-14.[1]                    Filed June 13, 2023.

————

Haruki Yamada, pro se in Docket No. 2718-14.

Yasuko Ogawa, pro se in Docket No. 3020-14.[2]

*Michael W. Tan*, *Casinova O. Henderson*, and *Juan M. Sarinana*, for
respondent.

---

[1] Petitioner Haruki Yamada filed a Petition at Docket No. 2718-14.  Petitioner
Yasuko Ogawa filed a Petition at Docket No. 3020-14.  The Court consolidated the
cases on February 12, 2015.

[2] Petitioners were represented by Joseph E. Mudd at the time of the filing of
the Motion papers.  Mr. Mudd is now deceased.  The Court withdrew him as counsel
on May 22, 2020.

[*2]                    MEMORANDUM OPINION

KERRIGAN, *Chief Judge*:   This case is before the Court on petitioners' Motion for Reasonable Litigation or Administrative Costs pursuant to section 7430.  Respondent has largely conceded the case, as noted in the parties' First Supplemental Stipulation of Settled Issues and the record of each case.[3]  The only issue for consideration is whether petitioners are entitled to litigation fees for 232 hours of work billed at the statutory rate plus $1,903 in administrative costs.

Unless otherwise indicated, all statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.  We round all monetary amounts to the nearest dollar.

*Background*

The following facts are derived from the parties' pleadings and Motion papers, including the Declarations and Exhibits attached thereto.  Petitioners resided in Japan when they timely filed their Petitions.

In the early 2000s petitioners were married and living in Southern California.  At that time petitioner Mr. Yamada was a dual American-Japanese citizen operating a construction business.  Petitioner Ms. Ogawa was a Japanese citizen living with her husband in the United States on a series of work visas.  She worked for a brokerage company.  In 2007 Mr. Yamada's business began to falter, and

---

[3] The parties filed Stipulations of Settled Issues in both Mr. Yamada's and Ms. Ogawa's cases.  In Mr. Yamada's case, for tax year 2008 the parties agreed that Mr. Yamada has unreported gross receipts or sales of $36,300 that should have been reported on Schedule C, Profit or Loss From Business.  He is not entitled to attribute one-half of his self-employment income to Ms. Ogawa as community property for tax year 2008.  For tax year 2009 the parties agreed that Mr. Yamada has unreported Schedule C1 gross receipts or sales of $23,300.  He is not entitled to attribute one-half of his self-employment income to Ms. Ogawa as community property for tax year 2009.  For tax year 2011 the parties agreed that Mr. Yamada has unreported Schedule C1 gross receipts or sales of $23,600.  He is not entitled to attribute one-half of his self-employment income to Ms. Ogawa as community property for tax year 2011.  The parties agreed that Mr. Yamada is not liable for any additions to tax for 2008, 2009, or 2011 (years in issue).

In Ms. Ogawa's case, respondent conceded the deficiency as to her for all years in issue.  Respondent also conceded that Ms. Ogawa was not liable for additions to tax for any of the years in issue.

[*3] the couple decided to sell their U.S.-based assets and moved back to Japan.

Petitioners filed their last U.S. return in 2007. They listed their residential address in Laguna Niguel, California. On July 20, 2012, respondent selected Mr. Yamada for audit for the years in issue.

On July 31, 2012, respondent mailed Form 4759, Address Information Request – Postal Tracer, to the Postmaster in Laguna Niguel. It requested that the Postmaster verify Mr. Yamada's last known address in Laguna Niguel or provide a forwarding address. The Postmaster indicated that Mr. Yamada's forwarding address was in Aliso Viejo, California.

Also on July 31, 2012, respondent mailed Form 4759 to the Postmaster in Aliso Viejo. It similarly requested that the Postmaster confirm Mr. Yamada's last known address. The Postmaster verified that mail was being delivered to Mr. Yamada's Aliso Viejo address as of August 11, 2012.

On August 29, 2012, respondent mailed Mr. Yamada a copy of Form 2039, Service of Summons, Notice and Recordkeeper Certificates and Summons, which was sent to Bank of America. Delivery of the copies by certified mail was accepted at Mr. Yamada's Aliso Viejo address as indicated by a signature on the return receipt.

On January 14, 2013, respondent selected Ms. Ogawa for audit for the years in issue. On April 16, 2013, respondent mailed to each petitioner Letter 3798 at their Aliso Viejo address. The letter indicated that petitioners had failed to file tax returns for the years in issue and scheduled an in-person conference for May 21, 2013, at respondent's Laguna Niguel office. Petitioners did not respond to the letter or show up for the conference.

On June 5, 2013, respondent summoned bank account information from three banks: Bank of America, U.S. Bank, and Union Bank. Respondent conducted bank deposit analyses on the information received from the banks and determined that petitioners had unreported taxable deposits of $302,360, $494,469, and $324,498 for taxable years 2008, 2009, and 2011, respectively.

On July 29, 2013, respondent mailed a Letter 950 (30-day letter) to each petitioner at their Aliso Viejo address. The 30-day letters included examination reports showing the proposed changes to

[*4] petitioners' tax for the years in issue and indicated that they could request a conference with Appeals.[4]  Petitioners did not respond to the letters, nor did they request an Appeals conference.

On August 28, 2013, respondent prepared substitutes for returns for petitioners for the years in issue.  On September 17, 2013, respondent mailed notices of deficiency to both petitioners at their Aliso Viejo address as well as their address in Yokohama, Japan.  The notice addressed to Mr. Yamada determined deficiencies for the years in issue and additions to tax under sections 6651 and 6654 as follows:

| Year | Deficiency | Additions to Tax | | |
|------|-----------|------------------|--|--|
| | | *§ 6651(a)(1)* | *§ 6651(a)(2)* | *§ 6654* |
| 2008 | $53,754 | $12,095 | $13,439 | – |
| 2009 | 91,450 | 20,576 | –[5] | $2,190 |
| 2011 | 55,324 | 12,448 | – | 1,095 |

The notice addressed to Ms. Ogawa determined deficiencies for the years in issue and additions to tax under sections 6651 and 6654 as follows:

---

[4] On July 1, 2019, the IRS Office of Appeals was renamed the IRS Independent Office of Appeals.  *See* Taxpayer First Act, Pub. L. No. 116-25, § 1001, 133 Stat. 981, 983 (2019).  We will use the name in effect at the times relevant to this case, i.e., the Office of Appeals or Appeals.

[5] The deficiency notice determined that for tax years 2009 and 2011, the section 6651(a)(2) additions to tax would be computed at a later date.

| [*5] Year | Deficiency | Additions to Tax | | |
|-----------|-----------|-----------|-----------|-----------|
| | | § 6651(a)(1) | § 6651(a)(2) | § 6654 |
| 2008 | $36,493 | $8,211 | $9,123 | – |
| 2009 | 69,599 | 15,660 | –[6] | $1,666 |
| 2011 | 39,364 | 8,857 | – | 779 |

The notices sent to petitioners' Aliso Viejo address were returned as undeliverable. Petitioners received the notices mailed to their address in Japan. Mr. Yamada and Ms. Ogawa filed their Petitions on February 14 and 18, 2014, respectively.

On April 24 and 25, 2014, Appeals informed petitioners that their case had been received for consideration. At the December 11, 2014, Appeals conference, petitioners' counsel stated that he needed additional time to obtain documents from petitioners that would prove they had no U.S.-source income during the years in issue.

On January 27, 2015, petitioners' counsel moved unopposed to continue the March 2015 trial session to allow him time to gather additional documents from petitioners (in Japan) and have them translated. The Court granted that motion and set a new trial date for October 5, 2015.

On January 8, 2015, petitioners' counsel informed respondent that he had received approximately 100 pages of documents that would need to be translated. He asserted that the only source of income petitioners had was not a U.S. source but from a Japanese corporation. Petitioners' counsel requested copies of all bank statements and deposit information that the revenue agent had used to conduct the bank deposit analyses. Respondent sent counsel the requested information.

On September 16, 2015, respondent moved unopposed to continue the trial to provide petitioners additional time to obtain translations. The Court granted that motion and struck the case from the October 5, 2015, trial session.

---

[6] The deficiency notice determined that for taxable years 2009 and 2011 the section 6651(a)(2) additions to tax would be computed at a later date.

**[\*6]** On July 13, 2016, the parties met and conferred over potential settlement of the cases. Petitioners did not agree to respondent's proposed terms. They instead requested audit reconsideration. After completing the audit reconsideration, respondent discovered that Mr. Yamada was allowed to deduct additional expenses.

On May 16, 2018, respondent moved unopposed to calendar the cases for trial. The Court granted that motion and set the cases for trial on November 26, 2018. On November 26, 2018, the parties came to a settlement of the cases. On December 20, 2018, they filed a Stipulation of Settled Issues wherein they agreed to reduce the deficiencies and eliminate the additions to tax. Petitioners filed the Motion at issue on January 18, 2019; they seek legal fees and administrative costs pursuant to section 7430.

*Discussion*

I.    *Legal Standards*

Section 7430(a) provides that the prevailing party may be awarded reasonable administrative or litigation costs for any proceedings brought by or against the United States in connection with the determination, collection, or refund of any tax, interest, or penalty. To recover costs, the taxpayer must establish that (1) the taxpayer is the prevailing party, (2) he or she did not unreasonably protract the proceedings, (3) the amount of the costs requested is reasonable, and (4) he or she exhausted the administrative remedies available. *Friends of the Benedictines in the Holy Land, Inc. v. Commissioner*, 150 T.C. 107, 111–12 (2018).

The "prevailing party" means any party which has substantially prevailed with respect to the amount in controversy or the most significant issue or set of issues presented. § 7430(c)(4)(A)(i). The section 7430 requirements are conjunctive, and the failure to satisfy any one of them will preclude an award of costs. *Minahan v. Commissioner*, 88 T.C. 492, 497 (1987). As the moving party, petitioners have the burden of proving that they satisfy each requirement of section 7430. *See* Rule 232(e).

II.   *Analysis*

Respondent conceded that petitioners have substantially prevailed with respect to the amount in controversy or the most significant issue or set of issues presented. Respondent also conceded

**[\*7]** that petitioners have met the net worth requirement pursuant to section 7430(c)(4)(A)(ii).

In the Response, respondent argues that petitioners' Motion should be denied because respondent was substantially justified in determining that petitioners had taxable, unreported income for the years in issue. Pursuant to section 7430(c)(4)(B)(i), a party is not treated as the prevailing party if the United States establishes that its position was "substantially justified."

Respondent bears the burden of showing that respondent's position was substantially justified. *See* § 7430(c)(4)(B)(i); Rule 232(e). To be substantially justified, respondent's position must have a reasonable basis in both fact and law. *See Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Respondent's legal position is substantially justified if based on supportable interpretations of federal tax statutes and caselaw. *See TKB Int'l, Inc. v. United States*, 995 F.2d 1460, 1468 (9th Cir. 1993). The litigation position of the United States is generally established at the time the Government files its answer in the judicial proceeding. *See* § 7430(c)(7); *Huffman v. Commissioner*, 978 F.2d 1139, 1148 (9th Cir. 1992), *aff'g in part, rev'g in part* T.C. Memo. 1991-144; *Maggie Mgmt. Co. v. Commissioner*, 108 T.C. 430, 442 (1997).

Respondent argues that petitioners should not be treated as the prevailing party because respondent was substantially justified in respondent's position that petitioners had unreported income for the years in issue. Respondent asserts that he formed this position on the basis of the revenue agent's bank deposit analyses, which indicated that petitioners had unreported deposits from various sources. Respondent contends that because Mr. Yamada was a U.S. citizen—and respondent assumed Ms. Ogawa was still a lawful permanent resident—it was justifiable to determine that the income was taxable by the United States.

Respondent further argues that it was justifiable to maintain this position because petitioners failed to prove that they were entitled to tax benefits under the United States-Japan treaty. They also failed to provide certified translations of the foreign documents they submitted which allegedly proved that the deposited income was tax exempt. Respondent contends that petitioners' own failure to update their mailing address resulted in their receipt of deficiency notices before any other communication.

[*8]    Petitioners argue that respondent was not substantially justified in determining that they had unreported income because there was no evidence that they were engaged in a U.S. business or income-producing activity.  Because there was no evidence of a U.S. business, petitioners argue, respondent was not justified in conducting bank deposit analyses. Petitioners further argue that once they received the deficiency notices, they provided all requested information.  They contend that certified translations were not necessary to prove the income was tax exempt in the United States. They claim that the filing itself was sufficient to show that they had no U.S.-source income.

We agree that respondent was substantially justified in determining that petitioners had unreported, taxable income.  After summoning account information from Bank of America, U.S. Bank, and Union Bank on June 5, 2013, respondent discovered that petitioners had unreported deposits from the years in issue totaling $1,121,327.

At the time the deposits were made, Mr. Yamada was a U.S. citizen.  Although Ms. Ogawa was not a U.S. citizen, respondent believed her to be a lawful permanent resident at that time because petitioners never provided respondent with an updated mailing address. Petitioners concede that they failed to notify respondent of their address change once they left the United States.  Because respondent was under the belief that petitioners remained U.S. residents at the time the deposits were made, it was reasonable for respondent to assume that petitioners remained liable for U.S. tax on their worldwide income.  *See Cook v. Tait*, 265 U.S. 47, 56 (1924).

Respondent therefore was substantially justified in asserting that petitioners were liable for tax on the unreported income solely on the basis of the bank deposit analyses. *See Clayton v. Commissioner*, 102 T.C. 632, 645 (1994) ("Bank deposits are prima facie evidence of income . . . and the taxpayer has the burden of showing that the determination is incorrect.").  Since respondent's position was substantially justified, petitioners are not entitled to an award of costs pursuant to section 7430.

We have considered all of petitioners' arguments, and to the extent not discussed above, we find them to be irrelevant, moot, or without merit.

**[\*9]**    To reflect the foregoing,

*An appropriate order will be issued, and decisions will be entered for respondent.*